STATE v. G. W. YOUNG et al.

No. A-3547.   Opinion Filed Jan. 10, 1922.
(203 Pac. 484.)

(Syllabus.)

1.   Criminal Law—Statute on Conspiracy as Defining a Felony.
Chapter 260, Session Laws 1915, making it a crime for two or more persons to conspire to commit any offense against the

state of Oklahoma, or to defraud the state of Oklahoma in any manner, or for any purpose, and providing that "all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars ($10,000.00) or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court or jury," creates and defines an offense that is a felony.

2.    **Conspiracy—Preventing Competition in Letting Public Contracts —Parties to Offense.** Under the provisions of this statute, it is an offense against the state for two or more persons to conspire and agree together to prevent competition in the letting of a contract to do public work, and all who take part in such conspiracy while it is in execution, and all who, with knowledge of the facts, concur in the plans originally formed, and aid in executing them, are fellow conspirators.

Appeal from County Court, Carter County; M. F. Winfrey, Judge.

G. W. Young and five others were jointly indicted for conspiracy. The indictment was transferred from the district court to the county court, where the defendants' so-called pleas to the jurisdiction of the county court were sustained, and defendants discharged, and the state appeals under Rev. Laws 1910, § 5990. Affirmed as to jurisdiction, and the judgment of the district court quashing the indictment held final.

Omitting caption and formal parts, the indictment is as follows:

"On the 15th day of June, in the year of our Lord one thousand nine hundred and eighteen, and prior to the finding of this indictment, W. F. Whitson, G. W. Young, and Ben Stephens, they the said W. F. Whitson, G. W. Young, and Ben Stephens being the duly elected, qualified and acting county commissioners of Carter county, Okla., and E.E. Gravelle, Tom Ellis, and C. C. Baker, did then and there unlawfully, willfully, and corruptly combine, confederate, conspire, and agree together and with each other to cheat and defraud Carter county, Okla., in the sum of $2,276.18, by then and there rejecting two certain bids of J. P. Sherman, who was then and there the lowest and best bidder, for the construction of bridges and

culverts on section F of the state highway in Carter county, Okla., as follows: One of the said bids being for $2,772.72 on miles 1, 2, 3 of said section and the other bid being for $14,-953.81 on miles 3, 4, 5, 6 of said section F and to accept two certain higher bids for the construction of the identical bridges and culverts, embraced in and covered by the bids of the said J. P. Sherman, to wit, the bids of one Tom Ellis, in amounts and for construction of bridges and culverts on section F of the state highway in Carter county, Okla., as follows: One of said bids being for $3,654.07 on miles 1, 2, 3 of said section, and the other bid being for $16,328.64 on miles 3, 4, 5, 6 on said section F, aforesaid, the net difference between the said bids being $2,276.18, the Ellis bid being that amount higher than the low bid of the said Sherman, all of the said bids aforesaid being submitted by the said Sherman and Ellis, in pursuance of a certain advertisement asking for bids for the construction of bridges and culverts, published, as required by law, by the board of county commissioners in the daily Ardmoreite, a newspaper of general circulation in Carter county, Okla., and thereafter, to wit, June 18, 1918, the said E. E. Gravelle did then and there, in pursuance of said agreement and conspiracy, and to effect the object thereof, offer and deliver to the said J. P. Sherman $400 in lawful money of the United States of America, in consideration that the said Sherman permit and allow the rejection of his said bids aforesaid, in order that the bids of the said Tom Ellis might be accepted by the board of county commissioners and contract for the construction of said bridges and culverts be awarded to the said Tom Ellis, by the said board, all of which actions of the said Gravelle, were known to and procured by the said Tom Ellis, and for the purpose that he might secure the contract for the construction of the said bridges and culverts aforesaid.

"In pursuance of said agreement and conspiracy, the said C. C. Baker, acting county engineer of Carter county, Okla., at the solicitation of the said Tom Ellis agreed to and with the said Tom Ellis to certify and approve as county engineer, such claims as the said Tom Ellis might file against the state of Oklahoma, and against Carter county, Okla., in the event he, the said Tom Ellis, was success-

ful in securing the rejection of the Sherman bids, by the board of county commissioners, and the awarding of the said contract to himself on the basis of his said bids, which he, the said Ellis, then and there knew was $2,276.18 higher than the lower and best bid as submitted by the said Sherman, and the said C. C. Baker did certify and approve certain claims against the state of Oklahoma and against Carter county, Okla., on the basis of the said Ellis bids, then and there knowing said Ellis not to be the lowest and best bidder on said construction aforesaid, and thereafter, W. F. Whitson, G. W. Young, and Ben Stephens, constituting the board of county commissioners of Carter county, Okla., and being in session as a board of county commissioners within and for Carter county, Okla., on the 18th day of June, 1918, did then and there, in pursuance of said agreement and conspiracy, and to effect the object thereof, willfully, unlawfully, corruptly reject the low and best bids aforesaid of the said J. P. Sherman, for the construction of certain bridges and culverts on said section F of the state highway in Carter county, Okla., on miles 1, 2, 3, 4, 5, 6, as aforesaid, the said W. F. Whitson, G. W. Young, and Ben Stephens then and there knowing that the said bids of the said J. P. Sherman was the lowest and best bids offered and submitted, for the construction of said bridges and culverts aforesaid, and thereupon, following the rejection of the said Sherman bids, the bids as aforesaid, submitted by Tom Ellis, were unlawfully and fraudulently accepted, and contract awarded to him, the said Tom Ellis, for the construction of the bridges and culverts, as described in his bids aforesaid, which accepted bids of the said Tom Ellis, were then and there well known to the commissioners, and each of them aforessaid, to be higher in the amount of $2,276.18 than the lowest and best bid, which said letting and awarding of said contract to Tom Ellis was for the express purpose of cheating and defrauding Carter county, Okla., in said sum aforesaid; the motion of rejection of the low bids aforesaid and acceptance of the higher bids aforesaid, and awarding of said contract was made by W. F. Whitson, and seconded by Ben Stephens, and thereupon all of said county commissioners, to wit, W. F. Whitson, Ben Stephens, and G. W.

Young, voting 'Aye' on said motion, did then and there unlawfully, willfully and fraudulently reject the lowest and best bid, and award the contract to Tom Ellis on the higher bids, and thereafter, in pursuance of said agreement and conspiracy, and with intent to effect the purpose and object thereof, the said Tom Ellis did then and there unlawfully, willfully, and corruptly make out and file certain claims with the county clerk of Carter county, Okla., for the difference between the higher and the lower bids, as aforesaid, the numbers and amounts of said claims being as follows, to w^it: Claim No. 199, warrant No. 171, for $705.35; claim No. 874, warrant No. 789, for $46.20; claim No. 1304, warrant No. 1065, for $996.80; claim No. 621, warrant No. 481, for $347.80, which said claims C. C. Baker, acting county engineer, in pursuance to said agreement and conspiracy, and with the intent to effect the purpose and object thereof, did then and there unlawfully, willfully, and corruptly approve and certify as true and correct, and thereafter, in pursuance to said agreement and conspiracy, and with the intent to effect the purpose and object thereof, W. F. Whitson, Ben Stephens, and G. W. Young, constituting the board of county commissioners within and for Carter county, Okla., aforesaid, did then and there unlawfully, willfully, and fraudulently approve and allow said claims and issue warrants to the said Tom Ellis in payment thereof, the said allowance of claims and issuance of warrants aforesaid, being ordered by the affirmative vote of each and every member of the said board of county commissioners, and thereafter, in pursuance to said agreement and conspiracy and with the intent to effect the purpose and object thereof, the said Tom Ellis did then and there unlawfully, willfully, and corruptly accept and receive said warrants in payment of the above aforesaid claims, thereby cheating and defrauding Carter county, Okla., in the sums of the respective amounts of said claims aforesaid, the total thereof aggregating $2,106.35, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state."

Order of the court entered January 11, 1919:

"This cause coming on to be heard on motion of the county attorney to transfer same to the county court, and it appearing that the indictment returned and filed herein on the 2d day of January, 1919, charged an offense against the laws of this state, and it further appearing to the full satisfaction of this court that the same should not be by this court transferred to the county court of Carter county:

"It is therefore ordered that this case, together with the indictment and all papers relating thereto, be, and the same is hereby, ordered not to be transferred to the county court, and that said indictment is hereby quashed, and the defendants, if in custody, ordered released.

"W. F. Freeman, Judge."

Order of the court entered March 26, 1919:

"This cause coming on for hearing on this the 26th day of March, 1919, upon the motion of the county attorney of Carter county, Okla., to transfer the same to the county court of Carter county, Okla., and it appearing'that the indictment returned and filed on the 2d day of January, 1919, charges an offense over which this court has no jurisdiction, and that the same is within the jurisdiction of the county court of Carter county, Okla:

"It is therefore ordered that this cause, together with the indictment and all papers relating thereto, be, and the same is hereby, transferred to the county court of Carter county, Okla.

"Thos. W. Champion, District Judge."

Journal entry of judgment:

"Now, on this the 10th day of April, 1919, the same being a regular judicial day of the April, 1919, term of the county court in and for Carter county, Okla., came on to be heard the above-styled and numbered cause, and came the plaintiff, the state of Oklahoma, by R. B. Brown, county attorney; and came the defendants, G. W. Young, W. F. Whit-

son, Ben Stephens, E. E. Gravelle, Tom Ellis, and C. C. Baker, in person and by their attorneys.

"And thereupon came on to be heard the plea to the jurisdiction of the court filed herein by the defendants; and the court, having heard said plea and argument of counsel therein, is of the opinion that the law is with the defendants, and that the defendants' plea to the jurisdiction of the court should be sustained.

"It is therefore ordered, adjudged and decreed by the court that the plea to the jurisdiction of this court filed herein by the above named defendants be, and the same is hereby, sustained, and that the defendants are hereby released from custody, and their bondsmen are released and relieved from any liability on their said bonds.

"And to the sustaining of the defendants' plea to the jurisdiction of the court, the plaintiff, the state of Oklahoma, then and there, in open court, excepted and gave notice of appeal to the Criminal Court of Appeals of the state of Oklahoma; and an extension of time being asked by the plaintiff in which to make up and serve case-made, the same was granted, and the plaintiff is allowed sixty days from this date in which to make up and serve its case-made, the defendants to have ten (10) days thereafter in which to suggest amends, and the same to be settled on five days' notice by either party. M. F. Winfrey, County Judge."

From this judgment the state appeals to this court under authority of the third subdivision of section 5990, Rev. Laws. The question reserved is answered in the opinion.

S. P. Freeling, Atty. Gen., W. C. Hall, Asst. Atty. Gen., R. R. Brown, Co. Atty., and John L. Hodge, Asst. Co. Atty., for the State.

J. A. Bass, Champion & George, Brett & Mathers, and Brown & Williams, for defendants in error.

DOYLE, P. J. (after stating the facts as above). G. W. Young, W. F. Whitson, and Ben Stephens, county commissioners of Carter county, C. C. Baker, acting county engineer of said county, and E. E. Gravelle and Tom Ellis were jointly indicted in the district court of Carter county for unlawfully conspiring for the purpose of preventing competition in the public letting of contracts for the construction of certain bridges and culverts on section F of the state highway in Carter county. The indictment was returned on the 2d day of January, 1919. The county attorney moved to transfer the indictment to the county court. On the 11th day of January, 1919, the motion was overruled, and the court, W. F. Freeman, presiding judge, ordered the indictment quashed and that the defendants be discharged. Thereafter, on the 26th day of March, 1919, on the motion of the county attorney, said indictment was transferred to the county court by order duly entered in the district court, Thos. W. Champion, presiding judge.

The defendants filed in the county court what they term "a plea to the jurisdiction of the court," on grounds substantially as follows:

"(1) That said district court has by an order not appealed from, which is a valid and binding order, quashed said indictment, and there is nothing before this court in consequence thereof to hear and determine.

"(2) That this court has no jurisdiction of this cause, because article 7, § 12, of the Constitution precludes county courts from trying any public officer for official misconduct in office, and article 7, § 10, of the Constitution confers on district courts jurisdiction to hear and determine all cases, except where exclusive jurisdiction is by the Consitution or by law conferred on some other court, and that the district court of Carter county is by the Constitution given exclusive jurisdiction to hear and determine this case."

The county court entered judgment sustaining this plea, and ordered that the defendants be discharged. The state reserved the question of jurisdiction and this judgment is now brought into review in this court.

Counsel for the state in their brief say:

"The sole question involved in this appeal is that of jurisdiction of the county court to try defendants under the charge preferred; and this question is itself twofold. In the first place it involves jurisdiction to try those defendants who were, at the time of the alleged offense, county officers and in the second place it involves jurisdiction in the absence of jurisdiction to try officers to try those defendants who are not officers upon a joint charge of conspiracy with such officers.

"Plaintiff in error first maintains that jurisdiction to try said defendants is vested exclusively in the county court, therefore the order of the district court quashing the indictment and discharging the defendants is a nullity; second, that the county court has jurisdiction to try defendants who were not officers, independent of jurisdiction to try said officers, while defendants in error contend that said county court has no such jurisdiction. If the contention of the defendants in error be correct, then said defendants are entitled to be discharged; if incorrect, the case should be remanded to the county court of Carter county for trial upon its merits, as to those over which said court has jurisdiction."

Counsel on both sides in their arguments pro and con erroneously assume that this indictment was for a conspiracy as defined by section 2232, Rev. Laws, which prescribes:

"If two or more persons conspire * * * to commit any crime, * * * they are guilty of a misdemeanor."

Section 12 of article 7 of the Constitution, among other things, provides that the county court shall not have jurisdiction in any action against officers for misconduct in office.

In Ex parte Moody, 3 Okla. Cr. 590, 108 Pac. 431, it is said:

"The prohibition contained in the Constitution against the exercise by the county court of jurisdiction in actions against officers for misconduct in office is not limited to actions for the removal of such officers from the positions which they occupy on account of the official misconduct, but extends to and includes any and all actions against such officers for misconduct in office, it matters not what the nature of the action or the punishment inflicted may be."

And see State ex rel. v. Russell, 33 Okla. 141, 124 Pac. 1092.

We find no reason to doubt the correctness of the rule announced in the Moody Case. However, in the view we have taken of the disposition of this case, the fact that this is a charge of conspiracy against officers and private citizens is wholly immaterial. We think the indictment in this case charges a conspiracy as defined by chapter 260, p. 621, Session Laws 1915, which reads as follows:

"Section 1. If two or more persons conspire either to commit any offense against the state of Oklahoma, or to defraud the state of Oklahoma in any manner or for any purpose, and if one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars ($10,000.00) or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court or jury."

Under the provisions of this section it is an offense against the state for two or more persons to conspire and agree together to prevent competition in the letting of a contract to do public work, and all who take part in such conspiracy while it is in execution, and all who with knowledge of the facts concur in the plans originally formed, and aid in executing them, are fellow conspirators.

The test by which to determine the question of jurisdiction to try the indictment in this case is, Does this section define an offense that is a felony? The definitions of "felony" and "misdemeanor" in this state are statutory, and not constitutional. Under the provisions of our Penal Code all crimes are classed as felonies or as misdemeanors, accordingly as they are or are not punishable by imprisonment in the penitentiary. Sections 2085, 2086, and 2087, Rev. Laws. And the test by which to determine whether an offense defined by the statute shall be deemed a felony or misdemeanor is made to depend upon whether the same is punishable by imprisonment in the penitentiary, or in the county jail. In statutes creating or defining offenses, the language usually expressly indicates whether the offense is to be deemed a felony or misdemeanor. It will be noticed that the statute under consideration is silent in reference to the place of imprisonment.

The statute in question was adopted from the federal statutes. Volume 2, § 5440 (U. S. Comp. St. § 10201). The language of this statute is almost identical with the language used in the federal statute. The offense defined by this section of the federal statute (section 5440) has by numerous decisions of the Supreme Court of the United States been held to be an infamous crime. Mackin v. U. S., 117 U. S. 348, 6 Sup. Ct. 777, 29 L. Ed. 909; U. S. v. De Walt, 128 U. S. 393, 9 Sup. Ct. 111, 32 L. Ed. 485; Parkinson v. U. S., 121 U. S. 282, 7 Sup. Ct. 896, 30 L. Ed. 959; In re Claasen, 140 U. S. 204, 11 Sup. Ct. 735, 35 L. Ed. 409; Ex parte Bain, 121 U. S. 12, 7 Sup. Ct. 781, 30 L. Ed. 849.

In Mackin v. U. S. it was held the offense defined by this section is an infamous crime, and persons cannot be held to answer otherwise than on the presentment or indictment of a grand jury. The test is whether the crime is one for which the statute authorizes the court to award an infamous punish-

ment, not whether the punishment ultimately awarded is an infamous one.

Under the decisions of the Supreme Court of the United States, the test to be applied in determining whether an offense is an infamous crime is the character of the punishment which may be inflicted, and an infamous crime is one punishable by imprisonment in a state prison or penitentiary.

Wharton says that "infamous crimes" are convertible with "felonies." Whart. Cr. Law, par. 561.

It is said in Cooley, Const. Law, p. 29, the punishment of the penitentiary must always be deemed infamous, and so must any punishment which involves the loss of civil or political privileges.

It is a well-settled general rule that, when a statute enacted by one state is literally or substantially adopted by the Legislature of a sister state, or by Congress, or is imposed by Congress upon a United States territory, the judicial construction already placed upon it by the courts of the state where it originated accompanies the statute, and is to be treated as incorporated therein. State v. Caruthers, 1 Okla. Cr. 428, 98 Pac. 474.

It follows as a sound rule of statutory construction that, when a statute enacted by Congress is literally adopted by the Legislature of this state, the judicial construction already placed upon it by the Supreme Court of the United States accompanies the statute, and is to be treated as incorporated therein, unless such construction would be in derogation of some general law.

Another rule is that a penal statute must be construed with such strictness as to carefully guard the rights of the accused, and at the same time preserve the obvious intention of

the Legislature; what the legislative intention was, however, can be derived only from the words used in the statute.

In Ex parte Cain, 1 Okla. Cr. 7, 93 Pac. 974, the Supreme Court of this state, construing the penal clause of the prohibitory provision of the Constitution, which declares a violation of the provision "shall be punished on conviction thereof, by a fine of not less than fifty dollars and by imprisonment not less than thirty days for each offense," held this constitutional provision self-executing, and the offense therein created to be a misdemeanor, and that the word "imprisonment" in its ordinary sense contemplates and means within the common jail rather than the penitentiary.

In the opinion it is said that, under the statute (section 2091, Rev. Laws), the maximum punishment for said offense is imprisonment in the county jail not exceeding one year, and by a fine not exceeding $500, or both such fine and imprisonment. We think this definition does not apply where a statute creates or defines a crime which is punishable by imprisonment for a term of years, and we have no doubt that the word "imprisonment" as used in the statute in question has a broader signification, and empowers a court to sentence a person convicted to imprisonment in the penitentiary, when the punishment imposed is for a longer period than one year.

Answering the question of jurisdiction submitted for our decision, therefore, we say:

The district court of Carter county, and not the county court of said county, had exclusive jurisdiction to try the indictment in this case. Our Code of Criminal Procedure provides:

"The court may either of its own motion or upon the application of the county attorney, and in the furtherance of justice, order an action or indictment to be dismissed; but in that

case the reasons of the dismissal must be set forth in the order, which must be entered upon the minutes." Section 6099, Rev. Laws.

In the State v. McDonald, 10 Okla. Cr. 413, 137 Pac. 362, it is said:

"The effect of this statute is to abolish the common-law right of the prosecuting attorney to nolle prosequi an indictment or information, except with the consent of the court. It goes further, and, under certain conditions, vests the trial judge with the power, whenever in his judgment the interest of justice may require it, to order the dismissal of an indictment or information, with or without the consent of the county attorney."

Our Code further provides that appeals to this court may be taken by the state "upon judgment for the defendant on quashing or setting aside an indictment or information." Section 5990, Rev. Laws.

It follows that, the state not having appealed from the judgment of the district court of Carter county quashing the indictment in this case, said judgment of dismissal is a finality.

MATSON and BESSEY, JJ., concur.