## C. H. BURTNER et al. v. STATE.

No. A-3808.    Opinion Filed Feb. 13, 1922.
(204 Pac. 135.)

(Syllabus.)

1. **Conspiracy—Elements of Offense to Defraud State—Mere Irregularities in Official Conduct.** The gist of the offense of conspiracy to defraud the state or any subdivision thereof is a common or joint purpose to perpetrate the fraud, coupled with some overt act designed to consummate the fraud, and where there is no criminal intent shown and no fraud is in fact perpetrated or attempted, the action, as a matter of law, must fail.

   (a) Mere irregularities in official conduct, without a design to cheat, are not sufficient to sustain a charge of conspiracy.

2. **Courts—County Court Without Jurisdiction of Felony of Conspiracy to Defraud State.** A conspiracy to defraud the state, as defined by statute (chapter 260, Sess. Laws 1915), is a felony of which the county court has no jurisdiction.

3. **Same—Misconduct in Office.** Section 12 of article 7 of our Constitution prohibits county courts from taking jurisdiction "in any action against officers for misconduct in office."

Appeal from County Court, Rogers County; Edward Jordan, Judge.

C. H. Burtner, Ray Sloctor, and H. G. Goad were convicted of conspiracy to defraud and were each fined $50 and one-third of the costs of the prosecution, and they appeal. Reversed.

Lashley & Rambo, Jennings & Hall, and Holtzendorff & Holtzendorff, for plaintiffs in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J.   C. H. Burtner, Ray Sloctor, and H. G. Goad, plaintiffs in error, who in this opinion will be referred to as the defendants, were by information filed in the county court of Rogers county on March 24, 1920, charged as follows :

"That on or about the 10th day of May, A. D. 1919, in the county of Rogers, state of Oklahoma, one C. H. Burtner, the director, and Ray Sloctor, the clerk, of school district No. 4 of Rogers county, Okla., and H. G. Goad, the regular elected and qualified teacher for said school district No. 4 for the school year ending June 30, 1919, did then and there willfully and unlawfully commit the crime of conspiracy in the following form and manner, to wit, that is to say : That the said C. H. Burtner, as such director, and the said Ray Sloctor, as such clerk, and the said H. G. Goad, as such teacher, all as aforesaid, on or about said date and in said county and state, did then and there willfully and unlawfully conspire and act together with the intent and purpose to cheat and defraud school district No. 4 of Rogers county, Okla., out of lawful money of the United States; and in furtherance of the aforesaid acts the said C. H. Burtner, as such school district director, and the said Ray Sloctor, as such school district clerk, did then and there execute, as such school district officers, certain school district warrants to the said H. G. Goad, as such teacher, for teacher's salary, which said school district warrants were then and there in excess of the contract salary of the said H. G. Goad, as such teacher and they, the said C. H. Burtner and Ray Sloctor, did then and there deliver said school district warrants to the said H. G. Goad as teacher's salary, and he, the said H. G. Goad, knowing the said school district warrants to be executed as aforesaid, and knowing said school district warrants to be in excess of his salary, as per his contract with school district No. 4 as aforesaid, did then and there receive said school district warrants as salary for teaching said school in said school district."

At the trial, April 28, 1920, the defendants and each of them were found guilty as charged, and by subsequent judg-

ment of the court their punishment was assessed at a fine of $50 each and costs. From this judgment and sentence they prosecute a joint appeal to this court.

The testimony discloses that defendant C. H. Burtner was school director and defendant Ray Sloctor was the clerk of school district No. 4 of Rogers county, Okla., and that defendant H. G. Goad was one of the teachers in said district, employed at a salary of $125 per month; that the other teacher was his wife, who was employed at a salary of $90 per month; that his salary was afterwards, by mutual consent reduced from $125 to $115 per month, and by verbal agreement entered into between him and the school board he was to perform the janitor services at the schoolhouse at an agreed price of $10 per month, making the combined salary for school work for Goad and his wife $215 per month.

The state, to maintain the allegations set forth in the information, introduced in evidence the teacher's contract and certain school warrants issued by the defendants Burtner and Sloctor, one of which, State's Exhibit 4, was a warrant drawn in favor of Mr. and Mrs. Goad in the amount of $205. It was claimed by the defendants that there was an error in the amount of this warrant, as the $10 for janitor services was not included. State's Exhibit 5 was a warrant drawn in favor of Mr. and Mrs. Goad in the amount of $225, which appears to have covered their joint salary, janitor hire for the current month, and janitor hire for the previous month, omitted from the warrant State's Exhibit 4. State's Exhibit 6 was a warrant drawn in favor of Mr. and Mrs. Goad in the amount of $231, which was explained as being the joint salary of the two teachers, $205, janitor hire, $10, and $16 for extra work performed in and about the schoolhouse by Orville Griffin, pursuant to an arrangement previously made with the board.

State's Exhibit 7 was a warrant drawn in favor of Mr. and Mrs. Goad in the amount of $288.40, marked "For teaching and expenses." This was explained as being the joint salaries of the teachers and for janitor services, amounting to $215; for labor performed in and about the schoolhouse, $17.50; registers, $1.50; bladders for basket balls, $3; Chelsea Hardware Co., $.85; attending teachers' convention at Oklahoma City, $50.55. The evidence shows that these teachers were instructed by the county superintendent of Rogers county and by the state superintendent of public instruction to make this trip and attend this convention at the expense of the school district. State's Exhibit 8 was a warrant in favor of H. G. Goad in the sum of $230 for teaching and expenses, being made up of the combined salaries of the teachers, janitor hire, $7.50 for poultry show, and $7.50 egg money. It appears that the poultry show was for the benefit of the school children, and that these sums were paid as premiums, upon the instruction of the county superintendent, and that the same were paid by Mr. Goad personally, who was reimbursed by this warrant. State's Exhibit 9 was a warrant in the amount of $225 in favor of H. G. Goad, which was $10 in excess of the combined salaries of the two teachers and Mr. Goad's pay for janitor services. Defendants claim that the amount of this warrant was a mistake, and that the mistake was corrected when the next warrant was drawn, $10 being deducted from the following month's warrant, which was State's Exhibit 10 and was in the amount of $205.

While it appears that some of these warrants were issued to Mr. Goad alone, they were for the combined salaries of Mr. and Mrs. Goad; the wife testifying that they were made payable to her husband at her request. There was no claim or contention that any additional warrants were ever issued for her salary.

State's Exhibit 13 was a warrant drawn in favor of defendant C. H. Burtner in the amount of $309.56, "for repair work on schoolhouse w s d." The evidence shows that it was found that the school district had a balance on hand at the close of the fiscal year, and that this warrant was drawn for the purpose of having funds available for repairing the schoolhouse and doing work upon the school grounds for the next fiscal year, and that this method of using the balance on hand was suggested by the county superintendent. The defendants learned, however, that they had been criticized for the drawing of this last warrant, and this warrant was never in fact cashed, although the record shows that the work was done. Whatever irregularity there may have been in the drawing of this warrant, for aught that appears in this record, there was no intent on the part of any of the defendants to perpetrate any fraud upon the school district, and no fraud was in fact perpetrated by the issuance of this last warrant.

We assume that, since this prosecution was commenced in the county court, it was the intention of the state to predicate it upon a portion of section 2232, R. L. 1910, which is as follows:

"Criminal Conspiracy Defined. If two or more persons conspire, either: * * *

"Fourth. To cheat and defraud any person of any property by any means which are in themselves criminal, or by any means which, if executed, would amount to a cheat or to obtaining money or property by false pretenses: * * *

"They are guilty of a misdemeanor."

The gist of the offense charged is a common or joint purpose of the defendants to cheat or defraud, coupled with some overt act designed to consummate the fraud.

There are a number of assignments of error urged by the defendants, but the Attorney General, for the state, has con-

fessed error, on the ground that the evidence as shown by this record is insufficient to constitute a conspiracy to defraud school district No. 4, as above defined. Upon this point we agree with the Attorney General, and it will therefore be unnecessary to notice the other assignments of error, excepting the question of the jurisdiction of the trial court.

The record as a whole discloses that the fiscal affairs of this school district were handled in a somewhat informal and irregular manner, but, considering all of the evidence, it does not appear that there was any intention on the part of the defendants, or either of them, to perpetrate any fraud upon the district, and none in fact was perpetrated. Whether or not, as a matter of law, the county superintendent or the state superintendent of public instruction had authority to direct these teachers to attend educational conventions at the expense of the school district, we do not decide. Be this as it may, these instructions from these superior officers were admissible to show the intent and purpose of issuing the warrant in the manner in which is was issued. The members of the board and these school-teachers may have feared, for obvious reasons, to disregard the instructions of these officers. We think that we may safely assume that this item of expense, as well as the item for poultry prizes and the several items for repairs, were for the benefit of the school district, from which they obtained value received.

Furthermore, it appears that one of the grounds set forth in the demurrer to the information was that the court was without jurisdiction of the cause. While this challenge to the jurisdiction of the court is not strongly urged in defendants' brief, we are inclined to hold that this objection was well taken. A conspiracy, as defined by chapter 260, p. 510, Session Laws 1915, is as follows:

"If two or more persons conspire either to commit any offense against the state of Oklahoma, or to defraud the state of Oklahoma in any manner or for any purpose, and if one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not more than $10,000 or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court or jury."

The information in this case, apparently predicated upon section 2232, R. L. 1910, before quoted, also states an offense under the 1915 statute last above quoted. It was held by this court in the case of State v. Young, 20 Okla. Cr. 383, 203 Pac. 484, decided January 10, 1922, that such an offense is a felony. If the offense charged is a felony, the county court for that reason would be without jurisdiction to try the cause. True, the complaint here does not specify that the acts complained of were feloniously done, but the conspiracy to commit the offense of defrauding the school district was an offense against the state of Oklahoma, in that it affected the revenues of the state as well as the revenues of the school district. Section 2232, R. L. 1910, supra, makes it a misdemeanor to conspire to defraud "any person." The 1915 statute makes it a felony to conspire to defraud the state. A school district being a subdivision of the state, it would seem that the offense charged in the information comes within the latter statute rather than within the former.

In construing the statutes above quoted we must not lose sight of the constitutional limitations affecting the jurisdiction of county courts. Section 12 of article 7 of our Constitution provides that the county court shall not have jurisdiction "in any action against officers for misconduct in office." To us it appears that this prosecution is in effect an action against officers for misconduct in office and comes within the consti-

tutional prohibition depriving county courts of jurisdiction in such actions.

The reasons for these deductions are very fully and ably analyzed by Presiding Judge Doyle in the case of State v. Young, supra.

The judgment of the trial court is reversed.

DOYLE, P. J., concurs.

MATSON, J., not participating.