**LAWHORN et al.**

v.

**ROBERTSON, County Judge.**

**No. A–11921.**

Criminal Court of Appeals of Oklahoma.

Feb. 10, 1954.

Fred W. Martin, E. J. Broaddus, Wagoner, Harold Shoemake, Muskogee, for petitioners.

Thomas J. McGoldrick, County Atty., Wagoner County, Wagoner, H. Tom Kight, Jr., Claremore, for respondent.

POWELL, Presiding Judge.

Fred Lawhorn and E. Q. Flowers filed herein their application, praying that this court issue a writ of prohibition directed to the County Judge of Wagoner county, prohibiting him from exercising jurisdiction and authority and applying judicial force, which it is alleged that he is attempting contrary to the provisions of Section 12 of Article 7 of the Constitution of the State of Oklahoma.

There was recited in the petition the proper presentation to the County Judge of the issues here raised and adverse rulings by the court. Also it was alleged that petitioners were without adequate remedy at law, and that a remedy by appeal or by other method, except by prohibition in this court, was inadequate and insufficient in that the same would deprive petitioners of having the matter speedily determined in a court having jurisdiction thereof.

At the time the petition was filed with this court, respondent was represented by the county attorney of Wagoner county, and oral argument was heard. The petition was supported by a brief shown to have been served on respondent several days prior to the filing, but respondent was granted time in which to file brief and petitioners time in which to reply thereto. This court has now had the benefit of the views of the parties.

The charging part of the information shown to have been filed and now pending in the county court of Wagoner county reads:

"Elton Q. Flowers and Fred Lawhorn did, in Wagoner County and in the State of Oklahoma, on or about the 18th day of December in the year of our Lord One Thousand Nine Hundred Fifty, and anterior to the presentment hereof, commit the crime of Extortion in the manner and form as follows, to-wit:

"That the defendants, Elton Q. Flowers, being the duly elected, qualified and acting Justice of the Peace in and for Wagoner County, Oklahoma, and Fred Lawhorn, a duly appointed and acting State Game and Fish Ranger, and each of them, as such officers, while acting in concert each with the other, did, on the day, month and year aforesaid, and in the County and State aforesaid, then and there extort and obtain property, to-wit: $3.00 of good and lawful money of the United States of America, from Alex A. Stark, with

consent of the said Alex A. Stark, which consent was induced, procured and obtained by them, the said defendants by means, and by use, and under color of official right, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State."

At the time of the hearing in this court it was developed by petitioners, and in effect agreed by the parties, that at the time mentioned in the information Elton Q. Flowers was the duly elected, qualified and acting justice of the peace, and Fred Lawhorn was the duly appointed, qualified and acting game ranger of Wagoner county.

It was the thesis of counsel for petitioner, quoting their statement presented, that "the allegations of the information are that the justice of the peace, and the ranger, 'as officers', in concert with each other, did extort $3 from one Alex A. Stark, 'by means, and by use, and under color of official right.' It is the position of the petitioners herein that these allegations are allegations of 'misconduct in office', and that therefore, under the provisions of Section 12 of Article 7 of the Constitution of Oklahoma, the County Court is deprived of jurisdiction to hear said cause." In short, it is urged that the action should have been filed in the district court.

The respondent, County Judge of Wagoner county, seeks first to avoid a determination by this court of the proposition of petitioners by denying the authority of this court to construe the Constitution of this State. He presents the following:

"1. That the answer to the proposition contained in the application for a writ of prohibition in the instant case can only be determined by construing the Constitution of the State.

"2. That the Supreme Court, being vested with superintending control over all inferior courts, is the proper and only court to make such decisions.

"3. If the Criminal Court of Appeals did have the power to issue the writ of prohibition in the instant case, it would be bound by its own decisions to deny the writ."

The Criminal Court of Appeals of Oklahoma was provided for in the State Constitution, but was brought into being, Chapter 28, S.L. 1907–1908, and perpetuated, Chapter 14, S.L. 1909, by the State Legislature.

Section 1 of Article 7 of the Oklahoma Constitution reads:

"The judicial power of this State shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, District Courts, County Courts, Courts of Justices of the Peace, Municipal Courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law."

The pertinent portion of Section 2 of Article 7 necessary to determine the issue raised, reads:

"The appellate jurisdiction of the Supreme Court shall be co-extensive with the State, and shall extend to all civil cases at law and in equity, and to all criminal cases *until a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law.*" (Emphasis supplied.)

The Constitution came into force November 16, 1907. The first legislature thereafter, Chapter 28, S.L. 1907–08, under the constitutional authority quoted enacted a bill entitled: "An Act creating a criminal court of appeals, defining the jurisdiction of said court." The Act provides, in part:

"Section 1. There is hereby created a criminal court of appeals, which shall consist of three members, any two of whom shall constitute a quorum, and the concurrence of two judges shall be necessary to a decision of such court. The members of said court shall have the same qualifications as justices of the supreme court, and each of whom shall receive a salary of three thousand five hundred dollars per annum.

"Sec. 2. *The criminal court of appeals shall have exclusive appellate jurisdiction in all criminal causes appealed from county and district Courts in this State.* (Emphasis supplied.) If

in any cause appealed to the criminal court of appeals, in which the construction of the Constitution of this State, or of the United States, or any Act of Congress is brought in question, the said criminal court of appeals shall certify to the supreme court of the State, the question involving the construction of the Constitution of this State, or of the United States, or any Act of Congress, for the final determination of the question so certified. Thereupon all further proceedings in said cause in the criminal court of appeals shall await the decision of the supreme court upon such question. Upon the final decision of such question by the supreme court, said supreme court shall certify its decision on such question to the criminal court of appeals, and said decision of such question by the supreme court shall govern said criminal court of appeals. The supreme court shall give precedence to all questions certified to it by the criminal court of appeals under this section.

"Sec. 3. The appellate and original jurisdiction of the criminal court of appeals shall be invoked in the manner prescribed by law.

\*   \*   \*   \*   \*   \*

"Sec. 10. Until otherwise provided by law, appeals in all criminal causes from county and district courts to the criminal court of appeals shall be taken in the same manner as is now provided by law for appeals in criminal causes, from county and district courts to the supreme court.

\*   \*   \*   \*   \*   \*

"Sec. 12. Said court, and judges thereof, shall have the power to issue writs of habeas corpus, and under such regulations as provided by law, issue such writs as may be necessary to enforce its own jurisdiction.

"Sec. 13. Said court shall have power, upon affidavit or otherwise, to ascertain such matter of fact as may be necessary to the exercise of its jurisdiction."

At the 1909 session of the legislature, House Bill 33, Chapter 14, S.L.1909, was enacted perpetuating the Criminal Court of Appeals, the Act being headed: "An Act perpetuating the Criminal Court of Appeals, defining its duties, powers, and jurisdiction." This act contained provisions not included in the 1907–08 Act, and Section 2 of the 1907–08 Act appeared in the 1909 Act as Section 7 thereof, but the first sentence of the 1909 provision had this additional clause added: "And such other courts as may be established by law"; and the remaining provisions of Section 2 of the 1907–08 Act were dropped, and have not reappeared in any of the adopted Codes of 1910, 1921, 1931, 1941 or 1951. In all the Codes it has appeared as in Section 7 of Chap. 14, Article II of the 1909 Session Laws, except that it has been strengthened, paragraph 40, Title 20 O.S.1951 now reading:

"The Criminal Court of Appeals shall have exclusive appellate jurisdiction, co-extensive with the limits of the State, in all criminal cases appealed from the district, superior and county courts, and such other courts of record as may be established by law."

Section 24 of House Bill 33 of the Session Laws of 1909 repealed all laws in conflict therewith.

By the most elemental reasoning it is at once obvious that the legislature quickly recognized that the provisions of Section 2 of the 1907–08 Act approved June 4, 1908, following the first sentence, were repugnant to that opening sentence, and being that "The criminal court of appeals shall have exclusive appellate jurisdiction in all criminal causes appealed from county and district Courts in this State."

Not only were the remaining provisions repugnant to this initial premise, but repugnant to the Constitutional provisions, Section 2, Art. 7, Const., that "The appellate jurisdiction of the Supreme Court shall be co-extensive with the State, and shall extend to all civil cases at law and in equity, *and to all criminal cases until a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law.* \*  \*  \*" (Emphasis supplied.)

If the criminal court of appeals could not construe constitutional provisions, State and federal, involved in criminal appeals, then such court would not be of much benefit to the State, and the actual burden of criminal appeals would still be on the supreme court, and by reason of certification from this court with a multiplicity of proceedings added, consequent long delays would necessarily result. It is safe to say that a majority of the petitions in error filed in this court in addition to other charges of error, raise constitutional questions.

We conclude that the Legislature omitted the provisions of Section 2 of Chapter 28, S.L. 1907–08 referred to, from the session laws of 1909 because such were incompatible and repugnant to the first sentence of that section, and the constitutional provision providing for a criminal court of appeals with "exclusive appellate jurisdiction in all criminal causes". This idea is further fortified by the fact that if any different intention existed it would have certainly been expressed in the intervening 45 years since the omission of the provisions in question. Only one case has come to our attention where this court actually certified a case to the supreme court for construction of a constitutional provision, and that happened prior to the 1909 Act of the Legislature above referred to. See Arie v. State, 1 Okl.Cr. 250, 100 P. 23, opinion dated February 2, 1909.

▮ The jurisdiction of the criminal court of appeals has been since statehood affirmed, not only by the decisions of this court, but by the supreme court. In fact on this point all the cases from both courts that have come to our attention are in complete harmony. It is true that in a few cases academic or theoretical discussion has been indulged in as to the rank of the courts.

See Jeter v. District Court of Tulsa County, 87 Okl. 3, 206 P. 831, where in a well reasoned opinion by Justice Miller the supreme court of Oklahoma denied that it had jurisdiction to issue writs of prohibition against inferior courts in criminal matters. (And see Ex parte Fowler, 3 Okl.Cr. 196, 105 P. 180, in which this court declared that it did not have jurisdiction to determine an application for a writ of habeas corpus to relieve the applicant from the judgment of a court adjudging him guilty of a civil contempt.) To paraphrase Justice Miller, such action by either court "would be doing by indirection what could not be done by direction." It was stated in the sixth paragraph of the syllabus:

"By the Constitution and statutes the Criminal Court of Appeals is vested with exclusive appellate jurisdiction in criminal cases; therefore this court does not have jurisdiction to issue the writ of prohibition in this case."

In the case of Herndon v. Hammond, 28 Okl. 616, 115 P. 775, the petitioner there applied to the supreme court for a writ of prohibition. He had been convicted in a municipal court of the sale of intoxicating liquor. He denied the jurisdiction of that court. On appeal to the county court he again raised the issue, and from an adverse ruling sought a writ of prohibition from the supreme court. In an opinion by Justice Williams the writ was denied. In the second paragraph of the syllabus the court said:

"The Criminal Court of Appeals having been specially created for the adjudication on appeal of all matters involving criminal offenses, and having jurisdiction by means of prohibition, as well as exclusive jurisdiction on appeal, to determine the question as to the jurisdiction of the municipal court of McAlester over the offense of selling intoxicating liquors contrary to an ordinance of said municipality and having held in favor of such jurisdiction, such holding, being at least persuasive and supported by authority, is followed by this court."

And see on this point Ex parte Anderson, 33 Okl. 216, 124 P. 980, holding that the same rule applies as to the determination of the constitutionality of a criminal statute. Also see Ex parte, Buchanan, 113 Okl. 194, 240 P. 699; and Ex parte Meek, 165 Okl. 80, 25 P.2d 54, and Ex parte Barnett, 180 Okl. 208, 69 P.2d 643, appeal dismissed Barnett v. Rogers, 302 U.S. 655, 58 S.Ct. 363, 82 L.Ed. 507, rehearing denied 302 U.S. 780, 58 S.Ct. 475, 82 L.Ed. 603.

In a fairly late opinion from this court by Jones, Judge, in Hurst v. Pitman, 90 Okl. Cr. 329, 213 P.2d 877, 878, it was held, paragraph two of the syllabus:

"Under the Constitution of Oklahoma (Art. 7, Sec. 2) and Statutes (Tit. 20 O.S.1941 §§ 1–16 and 31–48) the Supreme Court and the Criminal Court of Appeals are co-ordinate and exclusive in their respective appellate jurisdictions; the Supreme Court in civil cases, the Criminal Court of Appeals in criminal cases. Neither can interfere with nor control the other. Neither is subordinate to nor dependent upon the other, but both are responsible to the people from whom they each derive whatever power they respectively possess."

And see State ex rel. McDaniel v. Turner, 84 Okl.Cr. 247, 181 P.2d 296.

This brings us to a consideration of the sole question presented by the defendants, petitioners here, to the county court of Wagoner county, and now to this court, and that is, in their words: "Extortion by an officer under color of his official office, constitutes misconduct in his office and therefore that the county court does not have jurisdiction."

The information involved herein was apparently filed under the provisions of Tit. 21 O.S. 1951 § 1484, reading:

"Extortion under color of official right.—Every person who commits any extortion under color of official right, in cases for which a different punishment is not prescribed by this Code, or by some of the statutes, which it specifies as continuing in force, is guilty of a misdemeanor."

Section 1481 of Tit. 21 O.S.1951, defines extortion as follows:

"Extortion is the obtaining of property from another with his consent, induced by a wrongful use of force or fear, or under color of official right."

Section 12, Art. 7, of the Okla. Const., provides in part:

"The County Court, co-extensive with the county, shall have original jurisdiction in all probate matters, and until otherwise provided by law, shall have concurrent jurisdiction with the District Court in civil cases in any amount not exceeding one thousand dollars, exclusive of interest: Provided, *That the County Court shall not have jurisdiction in any action for * * *, or in any action against officers for misconduct in office.*

"* * * The County Court shall have jurisdiction concurrent with justices of the peace in misdemeanor cases, and *exclusive jurisdiction in all misdemeanor cases of which justices of the peace have not jurisdiction.*" (Emphasis supplied.)

The Oklahoma Constitution, Art. 7, § 10, gives district courts original jurisdiction in all cases where exclusive jurisdiction is not given some other court.

The question presented was first considered by this court in the case of Ex parte Moody, 1910, 3 Okl.Cr. 590, 108 P. 431. There a county weigher was charged with misconduct in office, the complaint being filed in a justice of the peace court. The defendant was granted a writ of habeas corpus and discharged, the court holding:

"A justice of the peace is without jurisdiction to try any action against any officer for misconduct in office."

Presiding Judge Furman, in the body of the opinion said:

"The prohibition contained in the Constitution against the exercise by the county court of jurisdiction in actions against officers for misconduct in office is not limited to actions for the removal of such officers from the positions which they occupy on account of the official misconduct, but extends to and includes any and all actions against such officers for misconduct in office, it matters not what the nature of the action or the punishment inflicted may be. It certainly will not be claimed that the justices of the peace have superior jurisdiction to that enjoyed by county courts. If a justice of the peace can try an officer for official misconduct, what would become of the case in the event of a conviction and appeal to the

county court? How could that court try a case de novo on appeal of which it had no jurisdiction? Any statute attempting to give jurisdiction to the county courts or justices of the peace to try such cases would be unconstitutional and void. Such jurisdiction is in district courts."

The supreme court of Oklahoma in State ex rel. Evans v. Shea, Judge, 1911, 28 Okl. 821, 115 P. 862, wherein the district court of Osage county had entered an order suspending a city marshal of Pawhuska from office by reason of the fact that he had been charged in that court with a certain offense against the laws of the State, reached a conclusion contrary to that in Ex parte Moody, supra. However, that court in State ex rel. Ikard v. Russell, District Court Judge, 1912, 33 Okl. 141, 124 P. 1092, in an opinion by Justice Kane who was also a member of the court when the Shea opinion was pronounced, stated that the case of Ex parte Moody, supra, had not been called to the attention of the court or considered in arriving at the conclusions reached in the Shea case. In the State ex rel. Ikard v. Russell case, which involved a decree based on misconduct in office filed in the district court of Carter county, and where relator contended that the district court was without jurisdiction to try misdemeanors of every grade, whether they involved official misconduct or not, the supreme court refused to grant a writ prohibiting the district judge from proceeding with the trial. It was held:

"It is the settled policy of the Supreme Court to follow the construction given to criminal statutes by the Criminal Court of Appeals, since the enforcement of such statutes must be in accordance with such construction.

"The prohibition in Const. art. 7, § 12, against the exercise by the county court of jurisdiction in actions against officers for misconduct in office, includes all actions against such officers for misconduct, and jurisdiction over such proceedings is in the district court."

To the same effect is the conclusion reached by the supreme court in Barton v. Haight, County Judge, 169 Okl. 481, 37 P.2d

968; and Hinkle v. Kenny, Warden, 178 Okl. 210, 62 P.2d 621.

In State v. Young, 20 Okl.Cr. 383, 392, 203 P. 484, 487 this court said: "We find no reason to doubt the correctness of the rule announced in the Moody Case." And in the companion case of State v. Young, 20 Okl. Cr. 397, 203 P. 489, we held: "Under the constitutional provisions [Const. Art. 7 § 12], the district court, and not the county court, has jurisdiction to try an indictment charging misconduct in office."

This principle of law has just recently been affirmed in the case of Hisel v. State, Okl.Cr., 264 P.2d 375.

Counsel for respondent cites the case of Cox v. State, 33 Okl.Cr. 436, 244 P. 206, where the defendant was convicted in the county court of Woods county on a charge of extortion under color of official right and sentenced to pay a fine of $1, and appealed to this court, where the conviction was affirmed. A careful examination of that case discloses that nowhere in the proceedings in the lower court, or in this court, was the jurisdiction of the county court challenged, and it is apparent that this court overlooked this jurisdictional matter. Such case should not, therefore, be construed as authority supporting the contention that a county court has jurisdiction to try a person charged with misconduct in office.

In Estes v. Crawford, District Judge, 62 Okl.Cr. 156, 60 P.2d 798, 799, the question of the jurisdiction of this court to issue a writ of prohibition, in a case as here presented, was fully discussed, and we said:

"The writ of prohibition is that process by which an appellate court prevents an inferior court from usurping or exercising unauthorized jurisdiction.

"Writ of 'prohibition' may not issue to prevent inferior court from erroneously exercising jurisdiction, but only to prohibit proceedings as to which inferior tribunal is wholly without jurisdiction, or threatens to act in excess of jurisdiction.

"The prohibition in Const. art. 7, § 12, against the exercise by the county court of jurisdiction in actions against officers for misconduct in office, in-

cludes all actions against such officers for misconduct, and jurisdiction over such proceedings is in the district court."

The above has been approved in State ex rel. Attorney General v. Higgins, District Judge, 76 Okl.Cr. 321, 137 P.2d 273; and see the analogous case of State ex rel. Webster, Sheriff, v. Caldwell, 84 Okl.Cr. 334, 181 P.2d 843.

■■ In State v. Young, 20 Okl.Cr. 397, 400, 203 P. 489, 490, we said: "The phrase 'misconduct in office' includes any willful malfeasance, misfeasance, or nonfeasance in office." And see paragraph 11 of syllabus by the editorial board in Barnett v. State, 60 Okl.Cr. 355, 69 P.2d 77, based on page 87, where it is said:

"The phrase 'misconduct in office' includes any willful malfeasance, misfeasance, or nonfeasance in office, and means any act or omission in breach of duty of public concern by person who has accepted public office provided his act is willful and corrupt and is not judicial. 'Malfeasance' is the performance of that which an officer has no authority to do and is positively wrong or unlawful. * * *"

This definition is here approved.

■■ By reason of the foregoing, it is the conclusion of this court that the petitioners are by reason of the lack of jurisdiction of the county court of Wagoner county to try said petitioners for the crime charged, entitled to the writ of prohibition prayed for.

Therefore, the petition for writ of prohibition is granted. The County Judge of Wagoner county is directed to refrain from proceeding further towards the trial of case No. 2440, State of Oklahoma v. Elton O. Flowers and Fred Lawhorn, now pending in the county court of Wagoner county, where they are charged with the crime of extortion.

JONES and BRETT, JJ., concur.