## STATE v. R. J. LAWRENCE.

No. A-1472.   Opinion Filed March 8, 1913.

(130 Pac. 508.)

1. **CONSTITUTIONAL LAW—Gaming—Distribution of Governmental Powers—Statutory Provisions—Definition of Offense of "Gaming."** (a) It is the exclusive province of the Legislature to declare what shall constitute a crime, but it is the duty of the courts to determine whether a particular act done or omitted is within the intendment of a general statute.

(b) The Legislature in creating an offense may define it by a particular description of the act or acts constituting it, or it may define it as any act which produces or is reasonably calculated to produce a certain defined or described result.

(c) Section 2782, Comp. Laws 1909, which provides that any person who wilfully and wrongfully commits an act which grossly injures the person or property of another, or which grossly disturbs the public peace or health, or which openly outrages public decency, and is injurious to public morals, is guilty of a misdemeanor, is not void for uncertainty, but constitutes a valid provision of our law, and as such should be enforced.

(d) When the Legislature creates, without defining, an offense which was a crime under the common law, the definition of the crime given by the common law will be treated by the courts as though it were a part of the statute itself, and will render certain and definite that which might otherwise be uncertain and indefinite.

(e) Gaming has always been an offense at common law. A wager laid upon the result of any contest of chance, skill or strength between men or beasts or men and beasts constitutes gaming.

(f) Bets publicly and openly made 'n the presence of and among an assembly of men, women, boys, and girls who are witnessing a game of base ball are prohibited by section 2782, Comp. Laws 1909.

2. **INDICTMENT AND INFORMATION—Evidence—judicial Notice—Duplicity in Indictment.** (a) This court takes judicial notice of the fact that the game of baseball when properly conducted is an innocent public amusement, and constitutes the most entertaining and popular public pastime or sport of the American people.

(b) For an indictment held to be good which charged the offense of openly and publicly betting upon a game of baseball, see opinion.

(Syllabus by the Court.)

*Appeal from Bryan County Court;*

*J. L. Rappolee, Judge.*

R. J. Lawrence was prosecuted for openly and publicly betting on a game of baseball, in violation of Comp. Laws 1909, sec 2782. A demurrer to the information was sustained, and defendant discharged, and the state appeals. Reversed and remanded.

*J. T. McIntosh,* Co. Atty., for the State.

FURMAN, J. The information alleges that on the 27th day of April, 1911, in Bryan county, the defendant did "willfully and wrongfully commit an act which grossly disturbed the public peace, openly outraged public decency, and injured the public morals, by then and there, in the presence of and among divers and sundry persons assembled at a baseball game and consisting of men and women, boys and girls, bet the sum of five dollars with one Jake Sims on said game, and said betting and gambling was done publicly and openly in the presence of said persons so assembled." To this information the defendant filed a demurrer, upon the ground that the facts stated therein did not constitute a crime under the statutes of this state. The trial court sustained the demurrer, and ordered that the defendant be released from custody, to all of which the state excepted. The information in this case is based on section 2782, Comp. Laws 1909, which is as follows:

"Every person who willfully and wrongfully commits any act which grossly injures the person or property of another, or which grossly disturbs the public peace or health, or which openly outrages public decency, and is injurious to public morals, although no punishment is expressly prescribed therefor by this code, is guilty of a misdemeanor."

Two questions are presented by this appeal. The first is as to whether or not the statute upon which this information is based is void for uncertainty. The second is as to whether or not the information is bad for duplicity.

First. Our Constitution provides that in all criminal prosecutions the accused shall be informed of the nature and cause of the accusation against him, and have a copy thereof, and be

confronted with the witnesses against him, and have compulsory process for obtaining witnesses in his behalf, and that he shall have the right to be heard by himself and counsel. See Williams' Ann. Const. Okla. sec. 28. This provision of the Constitution would become nugatory if the Legislature could create a crime in such broad and indefinite language that a citizen charged with a violation of such statute would not know what he must prepare to defend against, and where the court and jury would be without a fixed standard to determine what acts would constitute such offense. Penal statutes ought not to be expressed in language so uncertain as to mislead or deceive the common mind. It may be stated as a general principle of criminal jurisprudence that penal statutes should be expressed in such language that every man of ordinary understanding may be able to know when he has committed a crime. If this be not true, then to a large extent the judicial would be substituted for the legislative department of the state. See *Ex parte Hunnicutt,* 7 Okla. Cr. 213, 123 Pac. 179.

We are satisfied that in sustaining the demurrer to the information in this case the trial court acted upon the views which have just been expressed. While these views are correct, yet it is equally true that, when a statute uses words and terms which are of settled legal meaning or which indicate offenses known to and defined by the common law, the statute is sufficient, and should be sustained. Greater certainty in describing an offense is never necessary than the nature of the subject-matter dealt with will reasonable admit. See *State v. Coyle et al.,* 8 Okla. Cr. 686, 120 Pac. 316. Reasonable certainty is all that is required. It is true that the language of section 2782 is general, yet the words and terms which it uses in describing the offenses therein created are of settled meaning and indicate offenses well known to and defined by the common law. As every man is charged with knowledge of the law, we cannot see how it can be said that a person of ordinary understanding could fail to know what offenses were intended to be created by the section in question. But this statute has already been sustained

by this court. In the case of *Stewart v. State*, 4 Okla. Cr. 564, 109 Pac. 243, 32 L. R. A. (N. S.) 505, this court in construing this very statute in express terms decided that where the Legislature creates, without defining, an offense which was a crime under the common law, the common-law definition of the crime will be adopted, and will be considered as a part of the statute itself. The opinion is by Judge Richardson, who was then a member of this court. It considers this question exhaustively, and we think that the opinion is a magnificent and unanswerable piece of reasoning. We earnestly commend it to the careful consideration of the judges and lawyers of Oklahoma. It may be said that the opinion in Stewart's Case, being based upon a state of facts involving a breach of the peace, is not decisive of the question presented by the information in this case, which alleges a state of facts which openly outraged public justice and decency, and which injured public morals. But a careful reading of the Stewart Case will show that the reasoning and the authorities cited apply with equal force to the allegations contained in the information now before us as they apply to the allegations contained in the information in Stewart's Case. Gaming has always been an offense at common law. A wager laid upon the result of any contest of chance, skill, or strength between men or beasts or men and beasts constitutes gaming. Mr. Blackstone says it is an offense of the most alarming nature, tending by necessary consequence to promote idleness, theft, and debauchery among those of the lower class, and that among persons of a superior rank it has frequently been attended with sudden ruin and destruction and abandoned prostitution of every principle of honor and virtue. See 4 Blackstone, p. 171.

Every appellate court in Christendom has characterized gaming as a crime against decency and as being injurious to public morals, and as an offense which agitates and disturbs the public peace. This court has announced its views on this subject in no uncertain terms in the case of *James v. State*, 4 Okla. Cr. 587, 112 Pac. 944, 34 L. R. A. (N. S.) 515, 140 Am. St.

Rep. 693. James had been convicted of keeping what was known as a "Turf Exchange," at which his patrons congregated and bet upon horse races run at another place. He was prosecuted under section 2422, Comp. Laws 1909. This court held that the conviction could not be sustained by virtue of section 2422, but the court went further, and said:

"There is no doubt but that the making of bets and wagers in these exchanges constitutes gambling, and the exchanges themselves are common gambling houses, and are therefore nuisances *per se*. *Rex v. Rogier*, 1 B. & C. 272, 8 E. C. L. 117, 2 Dowl. & R. 431; *U. S. v. Dixon*, 4 Cranch, C. C. 107 [Fed. Cas. No. 14,970]; *Vanderworker v. State*, 13 Ark. 700; *State v. Layman*, 5 Har. (Del.) 510; *State v. Black*, 94 N. C. 809; *People v. Weithoff*, 51 Mich. 203 [16 N. W. 442], 47 Am. Rep. 557; *Anderson v. State* (Tex. App.) 12 S. W. 868. See, also, 14 Am. & Eng. Enc. L. p. 694, and cases there cited. They are such under our statutes. Under section 5771, Comp. Laws 1909, their operation may be enjoined, they may be abated as provided in chapter 71 of said laws, and under section 2465 of said laws their operation constitutes a misdemeanor, and those who conduct them may be prosecuted criminally and have inflicted upon them the punishment prescribed by section 2032, but a prosecution will not lie on an information based upon section 2422."

We are of the opinion that Comp. Laws 1909, sec. 2782, is not void for uncertainty and that it is valid and enforceable, and that any act which is willful and wrongful and which results in grossly disturbing the public peace, or openly outrages public decency, or injures public morals, is within its terms, and constitutes an offense against the laws of the state of Oklahoma.

Second. The indictment is not bad for duplicity because it charges that the defendant did willfully and wrongfully commit certain acts which grossly disturbed the public peace, openly outraged public decency, and injured public morals. If the acts charged were of such a nature as to produce either one or all of the results mentioned, the offense would be complete. The information charged that the defendant publicly and open-

ly and willfully and wrongfully and in the presence of and among divers and sundry persons, consisting of men, women, boys, and girls assembled at a baseball game, did bet the sum of $5 with one Jake Sims on said game, and that this act grossly disturbed the public peace, openly outraged public decency, and injured public morals. This court takes judicial notice of the fact that the game of baseball, when properly conducted, is an innocent public amusement, and constitutes the most popular and entertaining public pastime or sport of the American people. It is known from one end of our country to the other as the great American game, and is patronized by all classes, conditions, and sexes of our people, both old and young. As gaming is recognized as a pernicious crime by the law, it logically follows that open and public betting on this game in the presence of and among men, women, boys, and girls when assembled to witness a game of baseball is injurious to public morals and outrages public decency, and tends to destroy the peace and tranquility of the persons so assembled, and thereby disturbs the public peace. We do not desire to be understood as holding that a private wager upon the result of a baseball game, when not openly and publicly made, would constitute a violation of this provision of the statute.

We are therefore of the opinion that the trial court erred in sustaining the demurrer to the information in this case. The judgment of the lower court is reversed, and the cause is remanded, with directions to the county court of Bryan county to set aside its order sustaining the demurrer and discharging the defendant, and to reinstate this case upon its docket, and proceed with the trial of the same in accordance with the views herein expressed.

ARMSTRONG, P. J., and DOYLE, J., concur.