STATE v. W. J. BARNETT.

Nos. A-8949, A-8950.  Nov. 12, 1936.
Rehearing Denied Dec. 31, 1936.
(69 Pac. [2d] 77.)

356

360

362

364

Mac Q. Williamson, Atty. Gen., Lewis R. Morris, Co. Atty., and Walter Marlin, Asst. Co. Atty., for the State.

J. D. Lydick, Sid White, A. L. Beckett, and Curtis P. Harris, for defendant in error.

DOYLE, J. (after stating the facts as above). In these cases the state appeals from judgments in favor of the defendant entered upon orders sustaining motions identical in each case, to quash and set aside the indictments. The court rendering judgment in each case sustaining the motions ordered that the defendant, W. J. Barnett, be not discharged pending the appeals and the determination of the same by this court.

Procedure Criminal, section 3191 (22 Okla. St. Ann. § 1053), provides:

"Appeals to the Criminal Court of Appeals may be taken by the state in the following cases and no other:

"First. Upon judgment for the defendant on quashing or setting aside an indictment or information.

"Second. Upon an order of the court arresting the judgment.

"Third. Upon a question reserved by the state."

The grounds upon which an indictment may be set aside upon the motion of a defendant are clearly defined in Procedure Criminal. Section 2937 (22 Okla. St. Ann. § 493).

They are as follows:

"The indictment or information must be set aside by the court in which the defendant is arraigned, and upon his motion in any of the following cases:

"First. When it is not found, indorsed, presented or filed, as prescribed by the stautes or when the grand jury is not drawn and impaneled as provided by law, and that fact is known to the defendant at or before the time the jury is sworn to try the cause: Provided, that the defendant shall be conclusively presumed to know matters of record.

"Second. When the names of the witnesses examined before the grand jury are not made to appear on some part of the indictment, as provided in this chapter.

"Third. When a person is permitted to be present during the session of a grand jury while the vote on the finding of the indictment is being taken, or when it is shown that after the grand jury was first impaneled any member or members thereof, were discharged and their places filled by persons not regularly drawn from the jury list, as provided by law, and that they were admitted into the grand jury or took part in their deliberations, or that the grand jury was not impaneled anew as a whole body in open court."

Before a defendant in a criminal action is entitled to be heard on a motion to set aside an indictment, he must bring himself clearly within the provisions of the Code of Criminal Procedure. Section 2937, Stat. 1931; Daggs v. State, 12 Okla. Cr. 289, 155 Pac. 489 (22 Okla. St. Ann. § 493).

The motion to quash in each case avers:

"That said instrument in writing so returned or presented is not 'an accusation in writing, presented by a grand jury to a competent court charging a person with a public offense' in that it fails wholly to charge defend-

ant with any crime or public offense defined, denounced by or known to the laws of the State of Oklahoma."

Obviously, the motion in each case did not conform to the requirements of the statute above quoted.

Under our Procedure Criminal, the motion to quash and set aside an indictment takes the place of the plea in abatement at common law, a plea the subject-matter of which may be any objection which could not be properly interposed by a plea in bar.

Any plea setting up absence of jurisdiction of the court is a plea to the jurisdiction.

The purpose of a plea, no matter what nomenclature is used, is to make an issue. In the cases at bar the motions in substance were to dismiss because the statute being unconstitutional, the court had no jurisdiction to consider the same. However, we prefer to lay aside all technical objections to the pleas interposed and meet the arguments which have been presented to sustain the judgments.

A law that is unconstitutional is so because it is either an assumption of power not legislative in its nature, or because it is inconsistent with some provision of the Federal or State Constitution.

Section 1 of article 14 of the Constitution provides:

"General laws shall be enacted by the legislature providing for the creation of a Banking Department, to be under the control of a Bank Commissioner, who shall be appointed by the Governor for a term of four years, by and with the consent of the Senate, with sufficient power and authority to regulate and control all State Banks, Loan, Trust and Guaranty Companies, under laws which shall provide for the protection of depositors and individual stockholders."

The laws vitalizing this constitutional provision are found in chapter 40, articles 3 and 4, Okla. St. 1931.

The indictments are based upon provisions contained in said articles.

Section 9146 (6 Okla. St. Ann. § 18), is in part as follows:

"Any commissioner, assistant commissioner, secretary, examiner, or employee of the Banking Department, who shall be guilty of any corruption or misconduct in office, or who shall accept any gratuity, reward or present from any bank or bank officer, or shall take or accept any fee or compensation from any bank or banker during his term of office, shall be deemed guilty of corruption in office, and, upon conviction, shall be punished by imprisonment in the State Penitentiary for a term of not less than one, nor more than ten years; and any commissioner, secretary, examiner or employee of the Banking Department, who shall neglect to perform any duty, or who shall prove to be incompetent, negligent, or insubordinate, may be summarily removed by the State Banking Board."

And section 9163 (6 Okla. St. Ann. § 22) provides:

"Any Bank Commissioner or Assistant Bank Commissioner who shall neglect to perform any duty herein provided for, or who shall make any false statement concerning any bank, or who shall be guilty of misconduct or corruption in office shall, upon conviction thereof, be deemed guilty of a felony and punished in the manner herein provided, and in addition thereto shall be removed from office."

Penal Code, § 1778 (21 Okla. St. Ann. § 94), defines the word "corruptly" as follows:

"The term 'corruptly' when so employed, imports a wrongful design to acquire some pecuniary or other advantage to the person guilty of the act or omission referred to."

The judgments of the court below present a statement of the reasons which induced that court to sustain the motion to quash and set aside the indictments as follows:

"That sections 1778, 9146, and 9163, O. S. 1931 [21 Okla. St. Ann. § 94, 6 Okla. St. Ann. §§ 18, 22], are too vague, indefinite, ambiguous and uncertain under the limitations of the Constitution of the State of Oklahoma and of the United States of America to create the offense of corruption in office, and that the same are wholly insufficient to support the indictment returned."

It will be seen from the foregoing that the question to be determined is whether the statutes above quoted, defining what acts are prohibited and made punishable when committed by a bank commissioner or other officer of the banking department, acting as such; also providing that any Bank Commissioner or assistant "who shall be guilty of any misconduct or corruption in office shall" be deemed guilty of a felony, are void for uncertainty.

It is a well-settled rule that a penal statute must be construed with such strictness as to carefully guard the rights of the accused, and at the same time preserve the obvious intention of the Legislature; what the legislative intention was, however, can be derived only from the words used in the statute. State v. Young, 20 Okla. Cr. 383, 203 Pac. 484.

In Kepner v. U. S., 195 U. S. 100, 24 S. Ct. 797, 802, 9 L. Ed. 114, 1 Ann. Cas. 655, it is said:

"It is a well-settled rule of construction that language used in a statute which has a settled and well-known meaning, sanctioned by judicial decision, is presumed to be used in that sense by the legislative body."

Another well-settled rule of construction is that where words are employed in a statute which had at the time

a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense unless the context compels to the contrary. Standard Oil Co. v. U. S., 221 U. S. 1, 31 S. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734.

Where the purpose of a statute is in general the same as that of the common law, it will be presumed that the Legislature intended to re-enact in statute form the common law.

In Shires v. State, 2 Okla. Cr. 89, 99 Pac. 1100, we said:

"The definition of an act made an offense by statute, but not defined by it, may be ascertained by reference to common law."

In State v. Lawrence, 9 Okla. Cr. 16, 130 Pac. 508, it is said:

"When the Legislature creates without defining an offense which was a crime under the common law, the definition of the crime given by the common law will be treated by the courts as though it were a part of the statute itself, and will render certain and definite that which might otherwise be uncertain and indefinite."

16 Corpus Juris p. 67, is as follows:

"The Legislature in creating an offense may define it by a particular description of the act or acts constituting it, or it may define it as any act which produces, or is reasonably calculated to produce, a certain defined or described result; or it may group together various means by which the end may be accomplished and make any one of such means an offense when done to attain the object denounced by the statute. In the absence of provision to the contrary, a statute may punish an offense by giving it a name known to the common law, without further defining it and the common-law definition will be applied.

In creating an offense which was not a crime at common law, a statute must of course be sufficiently certain to show what the Legislature intended to prohibit and punish, otherwise it will be void for uncertainty. Reasonable certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible; but where the Legislature declares an offense in words of no determinate signification, or its language is so general and indefinite that it may embrace not only acts commonly recognized as reprehensible but also others which it is unreasonable to presume were intended to be made criminal, the statute will be declared void for uncertainty. The certainty required may be accomplished, as we have seen, by the use of words or terms of settled meaning, or words which indicate offenses well known to and defined by the common law. It is not necessary to use technical terms, and the Legislature may designate the offense by using words in common and daily use; and a penal statute is sufficiently certain, although it may use general terms, if the offense is so defined as to convey to a person of ordinary intelligence an adequate description of the evil intended to be prohibited." Citing Czarra v. Board of Medical Sup'rs of District of Columbia, 25 App. D. C. 443; State v. Keasley, 50 La. Ann. 761, 23 So. 900; State v. Lawrence, 9 Okla. Cr. 16, 130 Pac. 508; Stewart v. State, 4 Okla. Cr. 564, 109 Pac. 243, 32 L. R. A. (N. S.) 505; Crawford v. U. S., 30 App. D. C. 1; U. S. v. U. S. Brewers' Ass'n (D. C.) 239 F. 163; State v. Quinlan, 86 N. J. Law, 120, 91 A. 111; People v. Goldberger (Sp. Sess.) 163 N. Y. S. 663 (kosher).

In 14A Corpus Juris 1430, "Corruption" is defined as:

"Something against law; something forbidden by law, * * * The term is a very broad one and, as usually spoken or written, means moral turpitude, or exactly the opposite of honesty, involving the intentional disregard of law from improper motives. It includes bribery, but is more comprehensive, because an act may be corruptly done, although the advantage to be derived from it is not offered

by another. As used in the phrase 'corruption in office', however, the term would undoubtedly cover the act of an officer in accepting a bribe." Citing State v. Douglass, 239 Mo. 674, 144 S. W. 407.

Corruption in office is defined in Black's Law Dictionary as:

"The act of an official or fiduciary person who unlawfully and wrongfully uses his station or character to procure some benefit for himself or for another person, contrary to duty and the rights of others."

14A Corpus Juris, 1431, is as follows:

"The phrase is a comprehensive one intended to cover every class of crime which amounts to a felony when intentionally committed by a ministerial or judicial officer; and will include bribery, embezzlement, receiving benefits from the deposit of public funds, corruptly allowing and auditing claims, the unlawful disbursement of public moneys, failure to pay over excessive fees collected," etc.

Counsel for defendant in error in their brief say:

"Corruption in office has no 'well settled common-law meaning.' In fact 'corruption in office' was not a crime at common law. Surely this statement will not be denied, so we submit no further argument or authority in support thereof."

As refuting this statement, we quote 1 Russel on Crimes, p. 416:

"Where an officer neglects a duty incumbent on him, either by common law or by statute, he is indictable for his offense; and this whether he be an officer of the common law, or appointed by Act of Parliament: and a person holding a public office under the King's letters patent, or derivatively from such authority, has been considered as amendable to the law for every part of his conduct, and obnoxious to punishment for not faithfully discharging it. And it is laid down generally that any public officer is indictable for misbehaviors in his office."

And again, in the same work, page 432, it is said:

"Public officers may also be indicted for frauds committed in their official capacities."

Wharton says (Wharton's Crim. Law, § 1889):

"It is a misdemeanor at common law for a public officer in the exercise or under color of exercising the duties of his office, to abuse any discretionary power with which he is invested by law, from an improper motive. In such cases the existence of the motive may be inferred either from the nature of the act or from the circumstances of the whole case."

Bishop says (Bishop St. Crimes, p. 146):

"Since the common law punishes every breach of public duty, sufficient in magnitude for its notice, if a statute newly creates a duty of this sort, yet prescribes no punishment for its violation, the violator, while not indictable strictly under the statute, is so at the common law."

And again, in section 363 of the same work, it is said:

"Still, there is constant occasion to refer to the common law to ascertain the meaning of the statute in respect of the act; for we have seen that, if a statute employs a word or phrase which has already been used in the common law or in another statute, it is to be understood in the meaning previously determined. Thus, there are no common-law crimes against the United States; yet the acts of Congress, instead of minutely defining particular crimes, often make it penal, for example, to commit robbery or larceny or arson, and so on,—employing words of a well-known common-law meaning. In such a case the court looks to the common law to ascertain the nature and limits of the offense." Hughes v. Territory, 8 Okla. 28, 56 P. 708.

In the case of State v. Young, 20 Okla. Cr. 397, 203 Pac. 489, 490, this court, construing section 12, article 7,

of the Constitution, which among other things provides that the county court shall not have jurisdiction "in any action against officers for misconduct in office," said:

"The phrase 'misconduct in office' includes any willful malfeasance, misfeasance, or nonfeasance in office. Bishop substantially defines 'misconduct in office' in its penal sense as any act or omission in breach of a duty of public concern by one who has accepted public office, provided his act is willful and corrupt, and is not judicial. Bishop's New Crim. Law, pars. 459, 460."

"Malfeasance is doing that which officer has no authority to do, and is positively wrong or unlawful."

"Misfeasance by an officer is doing in a wrongful manner that which law authorizes or requires him to do."

"Nonfeasance by an officer is the substantial failure to perform duty." 2 Words and Phrases, Fourth Series, pages 617, 696, 801.

In State v. Slover, 113 Mo. 202, 20 S. W. 788, 789, it is said:

"The phrase 'misconduct in office' is broad enough to embrace any willful malfeasance, misfeasance, or nonfeasance in office."

In the case of Coffey v. Superior Court, 147 Cal. 525, 82 Pac. 75, it is said:

"The accusation sufficiently charged willful misconduct in office as it is contemplated by the provisions of section 758 of the Penal Code, that an accusation against any municipal officer for 'willful or corrupt misconduct in office' may be presented by the grand jury." And see State v. Flynn, 119 Mo. App. 712, 94 S. W. 543; Grebe v. State, 112 Neb. 715, 201 N. W. 143.

It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word.

Furthermore, a single sentence should not be set apart and considered without relation to its context. The expression or phrase quoted is not an exception to the rule and should be considered in connection with the sections in which it is used.

In Gunning v. People, 86 Ill. App. 174, 12 Am. Cr. Rep. 563, it is said:

"When a word, which may in its application have different meanings, is used in a statute, the sense in which such word is used by the legislature should control in construing and applying such statute. Where such word appears several times in the same chapter of the statute, and the sense in which it is used clearly appears in some sections, that may materially aid in determining the sense in which it is used in other sections of the same chapter."

In Hays v. State, 22 Okla. Cr. 99, 210 Pac. 728, this court held:

"Where statutes not a part of the Penal Code make any specific act criminal, and statutes in the Penal Code make the same act a criminal offense, the offense and punishment thereof shall be governed by the special provisions relating thereto. Section 2092, Rev. Laws 1910 [sec. 1773, Stats. 1931 (21' Okla. St. Ann. § 11)]."

Further held:

"Under proper averments the definition of embezzlement as found in section 3213, Rev. Laws 1910 [section 7466, Stat. 1931 (28 Okla. St. Ann. § 3)], may be considered in aid of defining embezzlement under the provisions of section 7437, Rev. Laws 1910 [section 7761, Stats. 1931 (19 Okla. St. Ann. § 641)], both of which statutes are specific in their nature, and not a part of the general Criminal Code."

In the case of State v. Bunch, 23 Okla. Cr. 388, 214 Pac. 1093, this court held:

"Usually where a statute makes it an offense to do this, that, or the other of several things, disjunctively, the whole or any part thereof may be charged, conjunctively, and proof of either or all will support a conviction."

In the case of Davis v. State, 40 Okla. Cr. 231, 267 Pac. 674, 675, the defendant was convicted of violating the state banking laws. This court held:

"Where a statute defines an offense, and enumerates disjunctively the different acts or things which constitute the offense, all of such acts may be charged in a single count conjunctively, since, though each by itself may constitute the offense, all together do no more, and constitute but one and the same offense."

In the cases at bar each indictment in charging the offense alleged acts, declared disjunctively by the statute, to constitute the offense conjunctively as constituting the crime. That this was correct pleading has been held repeatedly as in the foregoing cases.

The rule of strict construction of a penal statute is not violated by giving its words a reasonable meaning according to the sense in which they were intended, disregarding captious objections.

The charge contained in each of the indictments before us is within the statutory prohibition set forth in section 9146 (6 Okla. St. Ann. § 18), supra, as follows:

"Any commissioner, assistant commissioner, secretary, examiner, or employee of the Banking Department, who shall be guilty of any corruption or misconduct in office, or who shall accept any gratuity, reward or present from any bank or bank officer, or shall take or accept any fee or compensation from any bank or banker during his term of office, shall be deemed guilty of corruption in office."

This language is explicit; its meaning unmistakable. No ambiguity patent or latent appears to us in the text of the statute. The same may be said of section 9163 (6 Okla. St. Ann. § 22).

And we think the question in this case is answered in the other explicit provisions of the act.

The Constitution of the United States is the supreme law of the land, and next to it, and higher in authority than legislative statutes, is the Constitution of the state. Hence, when a statute comes in conflict with either, it must give away and the courts must decide whether such conflict exists or not.

This court is bound to sustain the fundamental law—the Constitution of the state according to its true intent and meaning. That is the great charter of our rights to which the humblest may at all times appeal and to which the highest must at all times submit. Ex parte Owens, 37 Okla. Cr. 118, 258 Pac. 758.

In Patterson v. State, 7 Okla. Cr. 497, 124 Pac. 942, we said:

"The courts cannot annul or pronounce void any act of the Legislature upon any other ground than that of repugnancy to the Constitution of the United States or of the state."

In State v. Coyle, 7 Okla. Cr. 50, 122 Pac. 243, we said:

"Every legislative act is presumed to be constitutional, and the courts should not declare an act to be unconstitutional unless it is clearly so. If there is doubt, the expressed will of the Legislature should be sustained."

Says Judge Cooley:

"The question whether a law be void for its repugnancy to the Constitution is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station could it be unmindful of the solemn obligation which that station imposes; but it is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered as void." Cooley's Const. Lim. c. VII.

In Powell v. Commonwealth, 114 Pa. 265, 7 A. 913, 60 Am. Rep. 350, 7 Am. Cr. Rep. 32, it is said:

"But, as is shown by Chief Justice Black in Sharpless v. Mayor, 9 Harris [21 Pa.] 147 [59 Am. Dec. 759], a statute will be declared void by the court 'only when it violates the Constitution clearly, palpably, plainly and in such manner as to leave no doubt or hesitation on our minds.' "

The Banking Board Act has been in effect for 25 years and has been upheld in all the decisions of both appellate courts of this state wherein it was construed.

In the case of Bynum v. Strain, Bank Commissioner, 95 Okla. 45, 218 Pac. 883, the Supreme Court construed section 1, article 14, of the Constitution, and reviewed the legislative acts effectuating the constitutional mandate, including section 9146, supra.

In the case of State v. Dennis, 28 Okla. Cr. 312, 230 Pac. 935, the defendant, Dennis, Bank Commissioner, was informed against for corruption in office, the information contained four counts, a demurrer was interposed to the information on the ground that none of the counts state facts sufficient to constitute a public offense. The demurrer was sustained and the state appealed. The prosecution was based upon section 9163, supra. This court held that

three of the four counts charging corruption in office charged an offense under this section.

Counsel for defendant in error say:

"The defendant submits his argument in support of the correctness of the lower court's decision under this proposition of law.

"The defendant says that the expression 'corruption in office' contained in sections 9146 and 9163, O. S. 1931 [6 Okla. St. Ann. §§ 18, 22], is not defined by statute, has no 'technical meaning' nor 'well settled common law meaning:' that it is 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application;' that it is 'not sufficiently explicit to inform those who are subject to it' as to its meaning; that it is 'too indefinite and uncertain to support an information or indictment;' that therefore the statutes fail to meet the requirement of the Federal Constitution or of the State Constitution and are void and the indictment based solely thereon is a nullity."

Quoting articles 5 and 6 and section 1 of article 14, Amendments to the Constitution of the United States, and section 7, article 2, of the State Constitution. Citing Connally v. General Construction Co., 269 U. S. 385, 46 S. Ct. 126, 127, 70 L. Ed. 322, holding that:

"A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

And that:

"A statute requiring a contractor, under penalty, to pay his employees 'not less than the current rate of per diem wages in the locality where the work is performed,' is so uncertain as to deprive contractors of their property without due process of law."

Other cases upon which the defendant in error seems to rely are: U. S. v. L. Cohen Grocery Co., 255 U. S. 81, 41 S. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045; U. S. v. Reese, 92 U. S. 214, 23 L. Ed. 563; U. S. v. Capital Traction Co., 34 App. D. C. 592, 19 Ann. Cas. 68.

In the foregoing cases, certain words and phrases as used in a penal statute are held to be so vague, indefinite, and uncertain as to be in violation of the Fifth and Sixth Amendments to the Constitution, securing to the accused the right to be "informed of the nature and cause of the accusation."

An examination of these cases leads to the conclusion that they have no application to the statute under consideration.

In the case of Groskins v. State, 52 Okla. Cr. 197, 4 Pac. (2d) 117, cited by counsel for the defendant, this court held:

"A penal statute is sufficiently certain, although it may use general terms, if the offense is so defined as to convey to a person of ordinary intelligence an adequate description of the evil intended to be prohibited."

It is alleged in the indictment in each case that the acts set forth therein were unlawful, willful, corrupt, and felonious. It is needless to say more.

It follows from what has been said that the statute in question does not violate the due process clause of the Fifth Amendment and the requirement of the Sixth Amendment, that "the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation," and does not deprive any person of liberty or property without due process of law within the meaning of that clause of the Fourteenth Amendment to the Constitution

384

of the United States. And again, the statute does not violate section 7 of article 2 of the State Constitution, declaring that "no person shall be deprived of life, liberty, or property, without due process of law," and does not violate that clause of section 20, article 2, declaring that the accused "shall be informed of the nature and cause of the accusation."

This court is of opinion that the statute, including the sections in question, is constitutional and that all objections which have been urged thereto are without merit. Hence, the motions to quash and set aside the indictments in the two cases before the court below should be overruled.

For the reasons hereinbefore stated, said judgments of the district court of Oklahoma county, setting aside and quashing the indictments, are reversed and said cases are remanded to that court for further proceedings not inconsistent with the views expressed in this opinion.

EDWARDS, P. J., and DAVENPORT, J., concur.