# WILLIE JACKSON v. STATE.

No. A-9765.   Feb. 19, 1941.
(110 P. 2d 929.)

Glen O. Morris, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty., for defendant in error.

JONES, J.   The defendant, Willie Jackson, with one Jack Mann, was jointly charged in the district court of Oklahoma county with the crime of conducting a gambling game, was tried, convicted, his punishment left to the court, who thereupon sentenced him to serve 18 months in the penitentiary, and he has appealed to this court.

The defendant makes two assignments of error, to wit:

(1) That the court erred in overruling his demurrer to the indictment.

(2) The court erred in overruling his demurrer to the evidence of the state at the close of the state's case, and in refusing to sustain his motion for an instructed verdict.

The first assignment is without merit. The defendant did not demur to the indictment when he was arraigned; but the minutes of the court show that he waived reading of the indictment and entered a plea of not guilty. No plea in writing or demurrer was ever filed; but the record discloses that at the beginning of the trial the defendant's attorney, without asking leave to withdraw his plea of not guilty for the purpose of interposing a demurrer and without such permission being granted, dictated a demurrer into the record on the sole ground that the information charged two offenses. The plea of not guilty entered by the defendant waived the question of the duplicity of charges in the indictment. Hagerty v. State, 22 Okla. Cr. 136, 210 P. 300; Childs v. State, 4 Okla. Cr. 474, 113 P. 545, 33 L. R. A., N. S., 563.

The plea of not guilty entered by defendant waived all defects, except that the court had no jurisdiction of the subject matter or that the indictment stated no public offense, which matter may be raised at the trial or in arrest of judgment. § 2956, O. S. 1931, 22 Okla. St. Ann. § 512.

Furthermore, we have examined the indictment and find it is not duplicitous, but clearly sets forth the offense of conducting a gambling game under the provisions of § 2190, O. S. 1931, 21 Okla. St. Ann. § 941.

The state introduced evidence of three deputy sheriffs who made a raid on a building in Oklahoma City on June 4, 1938. About 20 or 30 negroes were found congregated around a long table in the rear of the building. Among the negroes there was the defendant Willie Jackson. Most of the testimony of the state was directed at the codefendant, Jack Mann, who the state contended was the principal person in charge of the operations. Very little evidence was introduced against the defendant Willie Jackson. After the court overruled the demurrer of the defendant to the state's evidence, the defendant Jackson testified that he had rented the building from one L. E. Williams and was selling hamburgers, soda pop, and running a domino parlor there, but no gambling.

The defendant Mann did not testify.

If defendant Jackson had not testified that he had rented the place of business where the negroes were congregated, it is evident that he would not have been convicted. However, in determining whether or not the court erred in overruling the demurrer to the state's evidence, only the evidence introduced by the state in its case in chief may be considered. The state by its own proof must make a prima facie case. Thomas v. State, 70 Okla. Cr. 404, 106 P. 2d 836.

In determining this question, we herewith quote all of the evidence of the state which in any way connects the defendant Jackson.

The witness Clint Johnson deputy sheriff, after testifying to going to the particular building with several other deputies and finding 20 or 30 negroes in the rear of the place around the table, testified as follows:

"Q. All right. Were they all standing when you came in? A. Willie Jackson was sitting down, I believe. Q. That is this defendant here? A. Yes. Q. Where was he

sitting with reference to the table? A. With reference to the north side of the table he was about in the middle. Q. And you say the others were standing about one step back from the table? A. Yes, sir. * * * Q. Do you know what deputy brought Willie Jackson in? A. No, I don't."

Don Stone, deputy sheriff, testified that it was pre-arranged that he should take Jack Mann, the codefendant, into custody, while the other deputy sheriffs raided the game; that Jack Mann was at the front of the building, and he took him into custody; and Mann stated that he was just trying to make a living running that game. Stone testified as to the following as concerns the defendant Willie Jackson:

"Q. Did you see Willie Jackson there? A. Yes. Q. Where was Willie? A. I first saw him in the back room. Q. Was he sitting down or standing up? A. He was standing up then. They were all standing up at that time. Q. They were all standing up when you went back there? A. Yes."

Bob Turner testified that he was one of the deputy sheriffs who made the raid at 305 N. Stiles on June 4, 1938; that he saw a bunch of negroes in the back end of a building around a long table, and a big negro trying to make a "4" with some dice; that there was $4.10 on the table. With reference to the defendant Jackson, he testi-fied:

"Q. Did you preserve the dice and money? A. Yes. Q. Do you have that with you now? A. I have it here. The money is in my pocket. Q. Where was this chalk? A. Willie Jackson had it. Q. Those are the dice you got there? A. Yes. * * * Q. Were there a number of colored people around there? A. I would say 20 or 30 were standing around the room gambling. Q. You brought them, most of them, in did you? A. Yes, sir. Q. Do you know who brought defendant Willie Jackson in? A. No, I don't re-member. Q. But you do know he got to the jail? A. I

hauled some of them in my car and we just loaded them up."

The rest of this witness' testimony was directed to the defendant Jack Mann in an attempt to prove that he was in charge of the place. This was all of the evidence on behalf of the state that in any way connected the defendant Jackson. There is no proof which, by any reasonable inference, could sustain this charge.

The court erred in not sustaining the demurrer of the defendant to the state's evidence and advising the jury to return a verdict of not guilty as requested by defendant at the close of the state's case.

The judgment of the district court of Oklahoma county is reversed, and the defendant ordered discharged.

BAREFOOT, P. J., and DOYLE, J., concur.