Reuben D. GRIFFIN, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12904.

Court of Criminal Appeals of Oklahoma.

Dec. 21, 1960.

Laynie W. Harrod, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

Reuben D. Griffin, plaintiff in error, hereinafter referred to as defendant, was charged by information in the Court of Common Pleas of Oklahoma County with the crime of soliciting and enticing a female to commit an act of lewdness, was tried before a jury, found guilty and assessed punishment at imprisonment in the county jail for twelve months.

The petition in error and casemade were filed in this Court on May 5, 1960, and under our present rules a brief was due to be filed by May 25, 1960, the charge being a misdemeanor. No brief has been filed and when the case came on for oral argument on September 21, 1960, no one appeared to represent defendant.

The Court of Criminal Appeals has uniformly held that where the defendant appeals from a judgment of conviction and neither any brief is filed nor appearance for oral argument is made, this Court will examine the record and evidence, and if no error prejudicial to the substantial rights of the defendant is apparent, will affirm the judgment. Wilson v. State, 89 Okl.Cr. 421, 209 P.2d 512, 212 P.2d 144.

The record proper, of course, consists of the indictment or information and a copy of the minutes of the plea or demurrer, copy of the minutes of the trial, the charges given or refused, and the endorsements, if any thereon; and a copy of the judgment. 22 O.S.1951 § 977.

Our first duty is to determine whether or not the cause of action attempted to be stated comes within the jurisdiction of the court, and if a crime is stated.

The charging part of the information reads:

"* * * on the 12th day of August, A. D. 1959, in Oklahoma County, State of Oklahoma, Reuben D. Griffin whose more full and correct name is to your informant unknown, then and there being did then and there wilfully, unlawfully and wrongfully commit the crime of *Soliciting & Enticing a Female to Commit an Act of Lewdness:* in the manner and form as follows, to-wit:

"That is to say, the said defendant, in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there wilfully, unlawfully and wrongfully, solicit, induce and entice, one Joyce Camile Craig, a female, to commit an act of lewdness with himself by making immoral and indecent proposals to said female, all of said proposals were designed to openly outrage public decency, contrary to the form of the statutes" etc.

It is apparent, of course, that the charge was filed under authority of 21 O.S.1951 §§ 1029, 1030 and 1031. Section 1029 reads:

"It shall further be unlawful:

"(a) To engage in prostitution, lewdness, or assignation;

"(b) To solicit, induce, entice, or procure another to commit an act of lewdness, assignation, or prostitution, with himself or herself;

"(c) To reside in, enter, or remain in any house, place, building, or other structure, or to enter or remain in any vehicle, trailer, or other conveyance for the purpose of prostitution, lewdness, or assignation;

"(d) To aid, abet, or participate in the doing of any of the acts herein prohibited."

Section 1030 defines prostitution and lewdness, as follows:

"The term 'prostitution' as used in this Act [§§ 1028–1031 of this Title] shall be construed to include the giving or receiving of the body for sexual intercourse for hire, and shall also be construed to include the giving or receiving of the body for indiscriminate sexual intercourse without hire. That the term 'lewdness' shall be construed to include the making of any appointment or engagement for prostitution or lewdness or any act in furtherance of such appointment or engagement."

Section 1031 provides a penalty of not less than thirty days, nor more than one year in the county jail. The charge is a misdemeanor and the court had jurisdiction.

Counsel did not demur to the information, but when the case came on for trial summarily objected to the introduction of any testimony on the ground that the information failed to state a crime against any of the laws of the State of Oklahoma. The court without argument overruled the objection.

In the early case of Stone et al. v. State, 12 Okl.Cr. 313, 155 P. 701, 702, this Court said:

"Objections to the sufficiency of an indictment or information should be taken by a demurrer thereto as provided by our code of criminal procedure. Section 5791, Rev.Laws [22 O.S.1951 § 504]. Our Code further provides: 'When the objections mentioned in section 5791 appear upon the face of the indictment or information, they can only be taken by demurrer, except that the objection to the jurisdiction of the court over the subject of the indictment or information, *or that the facts stated do not constitute*

*a public offense,* may be taken at the trial, under the plea of not guilty, and in arrest of judgment.' Section 5799, Rev.Laws [22 O.S.1951 § 512]. Under this provision if it appears that the facts stated do not constitute a public offense, an objection to the introduction of evidence on that ground is sufficient to raise the question." (Emphasis supplied.)

Also in Knight v. State, 48 Okl.Cr. 335, 291 P. 142, this Court said:

"Where an information is first challenged by an objection to the introduction of evidence, the objection should be overruled if by any intendment or presumption the information can be sustained."

And see Brown v. State, 33 Okl.Cr. 217, 242 P. 1065; Edwards v. State, 5 Okl.Cr. 20, 113 P. 214; Elmore v. State, 40 Okl.Cr. 337, 268 P. 1115.

In Wilcox v. State, 13 Okl.Cr. 599, 166 P. 74, it is said:

"The information must contain a statement of the acts constituting the offense, and it is not sufficient to charge the offense in the words of the statute, when the particular circumstances of the offense charged are necessary to constitute a complete offense."

Then in Ex parte Burnett, 78 Okl.Cr. 147, 145 P.2d 441, in paragraph one of the syllabus, this rule was announced:

"The true test of the sufficiency of an information is not whether it might possibly have been made more certain, but whether it alleges every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet."

And see 22 O.S.1951 § 409(6), and Jackson v. State, 71 Okl.Cr. 258, 110 P.2d 929, where in paragraph 1 of the syllabus this Court said:

"A plea of not guilty entered by defendant waives all defects in an indictment or information, except that the court had no jurisdiction of the subject matter and that the indictment or information stated no public offense, which matters may be raised at the trial and by motion in arrest of judgment."

Defendant was informed that he did wrongfully solicit, induce and entice one Joyce Camile Craig, a female, to commit an act of lewdness with himself. So far so good, but then the pleader goes on to inform the defendant that he did this "by making immoral and indecent proposals to said female, all of said proposals were designed to openly outrage public decency."

It might be argued that the statute is so broad that an accused should be entitled to be advised as to the specific acts or words or conduct on his part that constituted indecent or lewd proposals. It might be said that only conclusions are set forth.

We feel sure that if defendant had obtained permission of the court prior to trial to withdraw his plea of not guilty for the purpose of filing a demurrer, and had argued it, that the court would have sustained the demurrer and permitted the county attorney to have amended the information instanter, if he could, or desired. In some instances where the facts would justify, the court might grant counsel additional time to investigate and to be prepared to meet the issue. But here, where the jury was in the box and the first witness was on the stand and had given her name, we have a situation where counsel could be "lying behind a log", and while we do not approve the information as one to be followed, we must hold that the court under the circumstances present, did not err in overruling the objection to the introduction of evidence in that the information, although defective, stated an offense under 21 O.S.1951 §§ 1029 and 1030.

The State, to prove its case, called as witnesses the prosecuting witness, Joyce Camile Craig, her mother Louise Craig, and the arresting officer, L. L. Filson.

Joyce Camile Craig testified that she was 16 years of age and lived with her mother, Louise Craig, at 1708 Highland

Drive, Oklahoma City; that on the afternoon of August 12, 1959 her mother was away from home temporarily and that she was looking after her little brother and baby sister and that they were watching TV. She said that the telephone rang and some man asked if her mother was there, and that she told him, "She is not here", and hung up the 'phone. She said that later on the 'phone rang again; she said she did not recognize the voice, but the male voice asked, "Is this you, Joyce?" and she said "Yes", and he said "What are you doing?" She answered, "Watching TV", and he replied: "Is your mother there?" and she said, "No." Witness said that she asked the person, "Who is this talking?" but he asked her, "How would you like to make ten dollars?" The voice went on to say: "All you have to do is to go down the street and meet me." Witness told him that she did not want to, and he said: "Well, you think about it." Witness told him "OK" and hung up the telephone. She then 'phoned her mother and also 'phoned the police. She said that she and the children returned to watching TV, and after a while the male voice called again and asked: "Have you made up your mind?" and witness said "No", and the voice said, "Well, look, all you have to do is walk down to the corner", and witness asked, "What do I do then?" But the voice asked, "Can you come?" and she said, "No, I have to stay with my brother and sister. I don't want—Mother don't want me to leave the house." The voice then said, "Well, you can come around the corner, can't you?" Witness asked, "Where is that?" and she was told, "On the corner of 17th and Highland", and witness asked, "For what?" Witness was told that the front door would be open, and to come in, and witness told the voice that she could not come then, and he said he would call back.

Witness said that in the meantime her mother returned home, and then the 'phone rang again and she motioned to her mother to keep quiet and her mother came over to the 'phone and got a pencil and pad and wrote down questions for her to ask. She said she still had not recognized the voice. The voice told her that he had on brown pants and a white shirt and was about average. Witness was asked if any proposals were ever made to her, and she said, "Oh yes. He already told me to come down and he would give me ten dollars to come over to the house, and my mother and the policeman told me to see—" She then said that he had offered her fifty dollars if she would go to a hotel with him. She said that her mother took the 'phone from her, and then witness finally recognized the voice as that of the defendant, a neighbor, whose home was directly back of her home. She told the voice that she recognized him as Mr. Griffin, and he wanted her to come over to his home for just ten minutes.

Witness told the voice, "You will have to come over here", and he said, "Well, OK, I will be over there in a few minutes then." She said that she was told to chase the kids off, and take her baby sister next door, or something.

Witness said that in about two hours the defendant came to her home. Her mother and policeman Filson were waiting. She said that defendant had told her, "I have on a green shirt and brown khakis", or something like that, and she had said "OK". He had asked her to have on a negligee. She said that someone came to the back door in about two hours and said, "Who is home?" and that she opened the screen and let the defendant in, and asked him, "Do you have fifty dollars?" and he said, "Yes". She said that her mother was standing right there, and he then said, "I came to borrow a screw driver" and then moved towards the door, and officer Filson came out of the hallway and arrested defendant. She said he had the same voice that she had previously heard on the telephone.

On cross-examination witness said that it was wire pliers that defendant asked for. Witness admitted that she was not dressed in a negligee. She said that the officer searched defendant and that he did not

have fifty dollars, and that no money was taken off of him.

Louise Craig, the mother, testified. She said that when she took the telephone from the daughter she recognized the voice as that of the defendant. She heard defendant tell her daughter that all she needed to wear was a robe and some panties. She said that when defendant walked into the house and saw her he asked to borrow a hammer.

On cross-examination witness said: "I thought he said a hammer. I know it was some kind of instrument or tool. It could have been pliers."

Officer L. L. Filson, policeman, testified to receiving the 'phone call from the Craig home reporting about a 'phone caller and that he went out there. He said his report showed that he made it at 3:25 p. m.; that some time after he got to the Craig home the defendant came to the back door and came in; that he heard him mumble something about a hammer, and that he arrested him. Asked on cross-examination, "What for?" he said, "It could have been for burglary," and finally said, "For investigation."

This ended the evidence for the State. The court refused to permit the defense to recall Joyce Craig for further cross-examination.

■ Defense interposed a demurrer, but it was not as to the sufficiency of the evidence, but based on the ground that there was no allegation that the prosecutrix was a minor, as the proof showed. The court did not err in overruling the demurrer on such ground, as under the statute cited, and under which the case was prosecuted, it would not matter what the age of the prosecuting witness or person involved might be.

The defendant testified and denied the 'phone calls detailed by Joyce Camile Craig. He said that although he had seen her in the yard of her home, his home being located right back of hers, that he had never talked to the girl. He was not asked about the mother. He stated that he was 40 years old, married, the father of two teen-age daughters; that he had worked at one service station for seventeen years; was then employed by two firms, working 16 hours a day. His wife also worked. He said that at the time of his arrest he had gone over to the Craig's to borrow a pair of pliers to fix an electric fan; that he knocked on the door and the Craig girl came and opened it and said, "Come in", and witness further stated, "So, I walked in and walked to the front of the house and there was her mother, and I said, 'Lady', I said, 'can I borrow a pair of pliers?' "

Defendant said when he asked about the pliers that he heard a noise behind him and looked and there was policeman Filson, whom he knew. That Filson said, "Well, I'm going to place you under arrest". Defendant was taken to the police station and searched, and had but sixteen cents. He was not told what the charge was, although he asked.

On cross-examination witness admitted that he had been fined in the city court for drunkenness and driving while under the influence of intoxicating liquor, but said that he had never been tried on any charge in any court.

The case was submitted to the jury with the results as stated.

When a case is lodged here and appeal perfected in accordance with law, and it may be that a defendant is unable to pay his attorney for further services, or the attorney may neglect the case, our notion of justice, particularly in view of a record as here, forbids that the case be affirmed with nothing more. That would be the easy route.

But notice the testimony of the prosecuting witness. Taking for granted that it was the defendant at all times who talked to her by telephone, which we must do in view of the findings of the jury, still what did he say to her that was lewd? That is the question. He wanted to see her down at the corner. The girl asked him what for, but apparently never got an answer. He offered her ten dollars, or fifty dollars if she would go to a hotel with him, but still

did not say for what purpose. We could reasonably speculate that it must be for some sexual play. But that is speculation. He did say to her to dress in a negligee when she finally on the apparent advice of the mother and police invited defendant to her home. What an ideal opportunity the mother and policeman had to permit defendant to make his play, if he had in mind acting indecent. But there the mother was in plain view, and defendant asked either for a pair of pliers or a hammer, and the policeman stepped out and arrested him.

■ In passing, it must be observed that the defendant had not committed any crime in the presence of the officer. He was not charged with a felony. There is no charge in Oklahoma statutes known as "Investigation". Nothing is against the law in this State unless it is made so by statute. 21 O.S.1951 § 2; State v. Stegall, 96 Okl.Cr. 281, 253 P.2d 183; Stewart v. State, 4 Okl. Cr. 564, 109 P. 243, 32 L.R.A.,N.S., 505.

If the mother and the officer had waited the record might have been such as to have demonstrated facts that without doubt would have supported the crime charged under the sections of the statute hereinbefore quoted, or without doubt would have demonstrated the good intentions of defendant.

■ The mother did say that she took the 'phone and heard defendant tell her daughter to wear her robe, but keep her panties on. The jury believed that and such would indicate some kind of sexual play, or at all events, conduct that would support the charge filed. See paragraph 3 of the syllabus in Landrum v. State, 96 Okl.Cr. 356, 255 P.2d 525, 526, for a factual situation withstanding a demurrer. And see Bayouth v. State, Okl.Cr., 294 P.2d 856. Here, by weakness of the information in the first instance, and the weakness of the evidence to support the charge in the second instance, justice demands that the sentence be reduced from twelve months to thirty days in the county jail.

As so modified, the judgment is affirmed.

NIX and BRETT, JJ., concur.