Patricia Ann PROFIT, Appellant,

v.

The CITY OF TULSA, Appellee.

No. M–77–487.

Court of Criminal Appeals of Oklahoma.

Jan. 25, 1978.

Ronald H. Mook, Thomas E. Salisbury, Legal Intern, Tulsa, for appellant.

Waldo F. Bales, City Atty., Edward J. Hicks, Asst. City Atty., Tulsa, for appellee.

## OPINION

BUSSEY, Presiding Judge:

The appellant, Patricia Ann Profit, hereinafter referred to as defendant, was charged in the Municipal Court of the City of Tulsa with the offense of Soliciting Another To Commit an Act of Lewdness or Prostitution, in violation of Tulsa, Okl., Rev. Ordinances, Title 27, § 154. She was found guilty in a non-jury trial and was sentenced to sixty (60) days in the Tulsa City jail. From that judgment and sentence she has appealed to this Court.

In its case in chief the City presented Officer Roger Harmon of the Tulsa Police Department, who testified that on December 6, 1976, he was assigned to the vice squad. He was wearing plain clothes and driving his personal car; and acting on instructions he drove past a particular address in the City of Tulsa. As he passed the house a woman, whom the officer identified as the defendant, came out on the porch and waved to him. He stopped his car and rolled down the window, and the defendant called to him to pull into the driveway. When he did so she walked out to the car.

The defendant declined the officer's invitation to get into the car, saying that he should come into the house instead. He followed her to a bedroom, where she closed the door. After a brief conversation the officer asked, "Well, how much is this going to cost?" To which the defendant replied, "Well, we will talk about price in a minute. First come here, I want you to urinate for me in the stool." When Officer Harmon told her that he was too nervous to do that the defendant said, "Take it out and let me look at it." This the officer refused to do. He again inquired as to price, and the defendant at this point became nervous. She accused the officer of being a cop, and asked him to leave. He then placed her under arrest.

 In her first assignment of error the defendant argues that the information by which she was charged was fatally defective in that it disjunctively alleged the commission of two separate crimes. The information alleged that she solicited another to commit an act of "lewdness *or* prostitution," and the defendant maintains that that allegation did not give her sufficient notice to prepare a defense. However, as we previously stated in *Groom v. State,* Okl.Cr., 419 P.2d 286 (1966), the tests of an information are whether the defendant was in fact misled by the information, and whether conviction under the information could expose her to the possibility of subsequently being put in jeopardy a second time for the same offense. Using these two criteria, we are of the opinion that the

defendant's assignment of error is without merit. Although the information in this case was worded in the disjunctive, it went on to state specifically the act giving rise to the charge, "to-wit: drop pants and urinate with herself at number 11 West Haskell." This statement was sufficiently specific to enable the defendant to prepare an adequate defense; and it was sufficiently specific to permit a future determination as to whether any subsequent charge brought against her was based on the same act.

The defendant's second assignment of error is that the City ordinance under which she was prosecuted is unconstitutional on its face for vagueness, over-breadth, and as a status crime. Tulsa, Okl., Rev. Ordinances, Title 27, § 154(B), which the parties have made a part of the record, makes it an offense for any person to "[s]olicit, induce, entice or procure another to commit an act of lewdness, assignation or prostitution with himself or herself." The defendant maintains that due to the use of the word "lewdness" a person of ordinary intelligence would not be able to determine what conduct is prohibited.

The Tulsa ordinance at issue is identical to 21 O.S.1971, § 1029(b). We considered that statute in *Griffin v. State,* Okl.Cr., 357 P.2d 1040 (1960), and although we criticized the information used in that case, our criticism was of the lack of specificity of the allegations:

"It might be argued that the statute [i. e., 21 O.S.1951, § 1029] is so broad that an accused should be entitled to be advised as to the specific acts or words or conduct on his part that constituted indecent or lewd proposals. It might be said that only conclusions are set forth." 357 P.2d, at 1043.

 The information in the present case does not suffer from this deficiency. As set forth above, the information specified the particular act of lewdness which the defendant allegedly committed. In considering a statute or ordinance with regard to challenges of vagueness, only reasonable certainty is required. Cf., *Lawrence v. State,* 9 Okl.Cr. 16, 130 P. 508 (1913); and

*Synnott v. State,* Okl.Cr., 515 P.2d 1154 (1973). We hold that the concept of lewdness is sufficiently a matter of common knowledge that the average citizen can determine what conduct is proscribed.

 Nor is the statute overbroad. Over-breadth is the doctrine that a penal statute or ordinance may be held unconstitutional even when not vague if the area of conduct proscribed infringes upon constitutionally protected freedoms. The Tulsa ordinance at issue here does not do that. The defendant argues that the ordinance would reach into the home and apply to the acts of married couples, but this is simply not true. Neither "lewdness" nor "prostitution" could be reasonably interpreted to extend to the acts of married persons in the privacy of their own home. Cf., *Warner v. State,* Okl. Cr., 489 P.2d 526 (1971), where the same argument was raised and rejected with respect to 21 O.S.1971, § 886.

Nor would the ordinance reach the act of merely waving to a friend, as the defendant argues. As the counsel for the City points out in his brief, such an act would only be illegal if it could be shown that the friend was waved to for an act of lewdness, assignation or prostitution.

 Finally with respect to this assignment, the argument that the ordinance creates a status crime is inapposite. Originally, two charges were filed against the defendant—the present one, and one under Title 27, § 154(C), which refers to being a known prostitute. This later section would appear to create a status offense, but the charge under that section was dismissed by the trial court. The section now at issue does not create a status offense. This assignment of error is also without merit.

 The defendant's third assignment of error is that the ordinance under which she was charged was unconstitutional as applied in her case, since the *Miller* standards should have been applied. To support her argument, the defendant cites *Dominguez v. City of Tulsa,* Okl.Cr., 539 P.2d 758 (1975), and *Ridgeway v. State,* Okl.Cr., 553 P.2d 511 (1976), in which we held that the

*Miller* standards should have been used in trying nude dancers on charges of outraging public decency. The defendant urges us to extend that holding to the present charge; however, such a ruling is not called for in this case.

The standards set out by the Supreme Court in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), were intended to insure that the constitutionally protected freedom of expression is not infringed upon. In *Dominguez* and *Ridgeway,* supra, it was the dance which necessitated the use of the *Miller* standards, not the charge of outraging public decency. Other acts meriting prosecution under the same charge might not warrant the use of those standards. And in the instant case the standards were not warranted at all. No aspect of the situation described by Officer Harmon could be considered to be a form of expression.

In addition we note that at no point during the trial did the defendant ask the trial court to make findings pertaining to the *Miller* standards, or to consider *Miller* in any way.

 The defendant also argues that the criminal nature of the act alleged is negated by the fact that it took place behind closed doors, but this is also erroneous. Although people are entitled to a certain amount of privacy in their own homes—assuming arguendo that the defendant was in her home—that privacy is lost when third parties are brought in. The defendant asked a total stranger to expose himself to her, and to urinate in her presence. This solicitation was not laved of its lewdness by the mere fact that the door was closed. There is no merit to this assignment.

 Nor is there any merit to the defendant's fourth assignment of error, in which she argues that the trial court violated her Fifth Amendment right against self-incrimination by allowing testimony of her character when she had not placed her character in issue. An examination of the record reveals that in fact no such testimony was presented. The trial court initially in-

dicated that it would be proper; but through a series of objections defense counsel forced the prosecuting attorney to so limit his inquiry that he abandoned the line of questioning before any specific questions could be asked or answered.

█ Fifthly, the defendant contends that there was no showing of intent by the State. This assignment of error is completely frivolous, as there is nothing in the record to indicate that the defendant did not intend to solicit the officer to do what she asked him to do. She clearly knew that what she was doing was illegal, inasmuch as she asked him to leave when she began to fear that he was a police officer. The defendant cites authorities pertaining to volition, but there is nothing in this case which raised any question as to voluntariness or self-control on her part.

█ The defendant's last assignment of error is that the trial court's construction of the city ordinance on which the charge was founded violated her right to due process of law by allowing regulation of conduct not within the scope of the valid exercise of the police power. She complains here that the trial court ruled that there was no need for specific findings that the act alleged was offensive, was committed in public, or was witnessed by a third party. We hold that the trial court was entirely correct in these rulings. Lewd behavior is by its very nature offensive to the community. If a person is found to have committed a lewd act then there is no need for a separate finding as to whether the act was offensive, or whether anyone in particular saw it or was offended by it. This assignment of error is also without merit.

For the foregoing reasons it is the opinion of this Court that the judgment and sentence in this case should be, and the same hereby is *AFFIRMED.*

CORNISH, J., concurs, and BRETT, J., dissents.

BRETT, Judge, dissents.

I believe the information in this case was defective and therefore this conviction should be reversed.